**In re BRICKELL INVESTMENT CORPORATION, Debtor,**

**In re DADE HELICOPTER JET SERVICE, INC., Debtor.**

**In re TROPICAL HELICOPTER AIRWAYS INC., Debtor.**

**Bankruptcy Nos. 87–02413–BKC–SMW, 87–02380–BKC–SMW and 87–02379–BKC–SMW.**

United States Bankruptcy Court, S.D. Florida.

April 18, 1988.

Arthur Halsey Rice, Julie W. Allison, Sydney Soltz, Miami, Fla., for debtor.

Clinton Mars, Terry Mitchell, U.S. Dept. of Justice, Tax Div., Washington, D.C., for I.R.S.

## ORDER ON OBJECTION TO CLAIM OF INTERNAL REVENUE SERVICE

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on before the Court upon the debtors', Dade Helicopter Jet Service, Inc. (Dade Helicopter), Tropical Helicopter Airways, Inc. (Tropical) and Brickell Investment Corporation (Brickell), Objection to Claim of the Internal Revenue Service (I.R.S.) pursuant to Bankruptcy Rule 3007, and the Court, having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

The I.R.S. filed proofs of claims (claims) for a combined sum of $52,039.86 against Tropical and Dade Helicopter. No claim was filed by the I.R.S. against Brickell. The claims against Tropical and Dade Helicopter are based on an alter ego theory with several non-debtor corporations (the non-debtors) and assert a secured status pursuant to several notices of federal tax lien arising from unpaid employment taxes. The federal tax liens referred to in the claims were not filed against the debtor corporations (debtors), but were filed against three non-debtor corporations known as Dade Helicopter, Inc. (DHI), Dade Helicopter Service, Inc. (DHS) and Tropical Helicopters, Inc. (THI).

Based upon this Court's Order for Joint Administration, Tropical and Dade Helicopter filed a combined objection to the I.R.S.'s claims. The basis of the debtors' objection is that the claims filed by the I.R.S. relate in whole or in part to the tax liabilities of entities which are separate and distinct from the debtors and as such, have no relation to the tax liabilities of the debtors. In addition, the debtors seek an order that all payments made to the I.R.S. since the filing of the bankruptcy herein be applied to any existing tax liabilities that they may have and further, that the Court order that the I.R.S. refund any excess payments made by the debtors.

The non-debtor, DHI, began a helicopter tour business in 1975. DHI owned and operated piston driven helicopters used for tours and held a type 135 FAA certificate. The non-debtor, DHS, was incorporated in 1976 and began its business activities in the latter half of 1979. DHS primarily operated aircraft for aerial photography with a limited amount of charter tour work. It did not have an FAA license and did not own, but leased the piston driven aircraft it operated. The non-debtor, THI, began its tour business in 1962 and ceased operations in 1985 when the city closed its facility. It initially leased piston driven aircraft from DHI, but subsequently leased from other outside sources.

DHI ceased doing business in 1981 after it suffered three successive aircraft crashes over a six week period. DHI's bad publicity negatively influenced DHS's business and with pressure from the City of Miami to cease operations, DHS went out of business in the first quarter of June of 1983.

The debtor, Brickell, was incorporated in 1985 for the purpose of leasing aircraft and equipment. The debtor, Tropical, began its business operations as a scheduled carrier with a D.O.T. 298A Certificate in 1983. Tropical initially leased a Bell Jet Ranger from an outside corporation to use for scheduled flights. After Brickell's incorporation, Tropical began leasing its Bell Jet Ranger from Brickell. The debtor, Dade Helicopter, was incorporated in May of 1983 to provide aircraft services to the video tape and commercial television production industry and to provide charters for professional air surveys. It also initially leased aircraft from an outside corporation, but presently leases aircraft from Brickell.

The debtor and non-debtor corporations maintained separate books and records. A review of the books and records from Trop-

ical, Dade Helicopter, Brickell and the three non-debtors by a Certified Public Accountant reveals no indication that any assets from the three non-debtors were transferred to any of the debtors. In addition, the I.R.S.'s review of over 4,000 documents belonging to the debtors, including the corporate books and ledgers, reveals only two items that the I.R.S. asserts as evidence of a commingling of assets. One item is a check written on THI's account to a car dealer in the sum of $2,578.59 for car repairs on a vehicle owned by Tropical. However, the repaired vehicle was borrowed from Tropical by THI and there was an accident. Accordingly, THI was responsible for repairing Tropical's vehicle and the check written by THI was to pay for those repairs. The second item was a check written by THI in the amount of $463.41 to a Tropical employee. The I.R.S. urges the Court to find that this check is, in and of itself, sufficient evidence of a commingling of assets. However, since the I.R.S. did not determine if any internal bookkeeping adjustments were made between the two corporations which would account for the payment of this check by THI, the Court cannot make such a finding.

The I.R.S. agent responsible for the nominee assessment against the debtors stated that her decision was based upon her belief that the debtors are a continuation of the non-debtors' business and that this belief was based, in part, on the fact that the debtors essentially have the same employees formerly utilized by the non-debtors. A statistical analysis of the percentage of wages paid in 1983 by Dade Helicopter to former non-debtor employees was 92%. Yet, in actual number of employees, this percentage of wages translates into 8 out of 13 Dade Helicopter employees being former non-debtor employees. The percentage of wages paid by Dade Helicopter to former non-debtor employees declined to 67% and 76% in the years of 1984 and 1985, respectively. No figures were available for the actual number of former employees employed by Dade Helicopter for these years.

There is a limited number of pilots in the south Florida area from which the debtors can procure employees. The fact that the debtors employ pilots who formerly worked for non-debtors is to be expected in this industry. The debtors do not employ any former mechanics of the non-debtors.

The I.R.S. agent further testified that another factor in her decision to assess a nominee levy against the debtors is that the non-debtor and debtor corporations were organized and controlled by the same individuals. However, the only evidence presented to support this testimony was a letter dated November 29, 1983, written on Dade Helicopter stationery, signed by the President of Dade Helicopter, addressed to the City of Miami, containing a statement that the principals were to remain the same between Dade Helicopter and DHS. The Court finds that this letter, alone, is insufficient to find that the non-debtor and debtor corporations were organized and controlled by the same individuals.

The I.R.S. took the position that the debtors and non-debtors operated from the same place of business and had the same phone numbers. The location of the debtors' place of business and that of the non-debtors' is similar because both the non-debtors and the debtors operated from Watson which is the only heliport in downtown Miami. Further, the debtors do not operate from the former physical location of the non-debtors, but rather, are located at a different address in a different section of the island. Although the home phone number of the debtors' officers that appears on the debtors' corporate checks is the same home phone number that appeared on the non-debtors corporate checks, the debtors all have individual phone numbers which differ from the non-debtors' former phone numbers. Additionally, the debtors also have one common phone number which was never utilized by the non-debtors.

■ Pursuant to Bankruptcy Rule 3001(f), the filing by the I.R.S. of a proper claim constitutes prima facie evidence of the validity and the amount of the claim. While the burden of proof is on the I.R.S., the debtors have the burden of going for-

ward to meet or overcome the prima facie effect given to the claims filed. *In re Trending Cycles for Commodities, Inc.,* 26 B.R. 350 (Bankr.S.D.Fla.1982).

The I.R.S. argues that its claim should be allowed because the debtors are the alter ego of the non-debtors and as such, the I.R.S. should be entitled to pierce the corporate veil of the debtors to hold them liable for the non-debtors' tax liabilities. When determining whether an alter ego exists from which the I.R.S. may satisfy the obligations of another, the Court is bound by state law. *Aquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960); *Terrapin Leasing, Ltd., v. United States,* 55 Amer.Fed.Tax Rpts. 2D 85–513, 85–514 (10th Cir.1981); *Wolfe v. United States,* 612 F.Supp. 605 (D.Mont.1986).

Absent a showing that one corporation manipulated another or that the corporations were treated as one and that the "instrument" corporation was used to mislead creditors, Florida courts have long held that a corporate entity will not be ignored simply because the number of stockholders is few and there is a presence of common directors among a parent corporation and its subsidiaries. *Bendix Home Systems, Inc. v. Hurston Enterprises,* 566 F.2d 1039, 1042 (5th Cir.1978); *Advertects v. Sawyer Industries,* 84 So.2d 21, 24 (1955). However, when a corporation is a mere name change and a continuation of another's business, controlled by the same persons and made up of essentially the same assets and resources as the old corporation, an alter ego situation exists, which can lead to a finding that the corporate entity should be ignored. *F & C Services, Inc.,* 44 B.R. 863 (Bankr.S.D.Fla.1984).

When determining whether an alter ego theory exists, several factors should be considered including; whether corporate formalities were observed; whether one corporation dominated another by virtue of its ownership, control and congruency of established goals; and whether there was a transfer or commingling of assets between the corporations. *Shearson Hayden Stone, Inc. v. Lumber Merchants, Inc.,* 500 F.Supp. 491, 503 (S.D.Fla.1980); *See also, Piercing the Corporate Veil in Florida: the Requirement of "Improper Conduct"* 16 Stetson L.Rev., 59, 68 (1986).

Considering the totality of the circumstances, the Court finds that the I.R.S. has not sustained its burden of proof with respect to its allegation that the debtors are the alter ego corporations of the non-debtors. The Court further finds that the I.R.S. has not met its burden of proof as to the commingling of funds between THI and Tropical; that the debtor corporations are merely a continuation of the non-debtors' business; or that there was a transfer of assets from the non-debtors to the debtors. It is therefore

ORDERED AND ADJUDGED THAT:

1. The I.R.S.'s claims are stricken and the debtors are not liable for the employment tax liabilities of the non-debtors; and,

2. Any excess payments made by the debtors over and above the tax liabilities incurred by the debtors shall be returned by the I.R.S.