Revised July 12, 2002

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

Nos. 00-31283, 01-30881
_____


GEORGE RANDALL PATIN; LAURA WIER PATIN

                    Plaintiffs-Appellees

     v.

THOROUGHBRED POWER BOATS INC; ET AL

                    Defendants

THOROUGHBRED POWER BOATS INC; STEVEN STEPP; VELOCITY POWER
BOATS INC

                    Defendants-Appellants

_____


CATHERINE ILENE BOLEY; DARIN LANE WATKINS

                    Plaintiffs-Appellees

     v.

THOROUGHBRED POWER BOATS INC

                    Defendant-Appellant

_____


LOUISIANA FARM BUREAU INSURANCE COMPANY

                    Plaintiff-Appellee
     v.

THOROUGHBRED POWER BOATS INC; ET AL

                    Defendants

THOROUGHBRED POWER BOATS INC

                    Defendant-Appellant

Appeal from the United States District Court
for the Middle District of Louisiana

June 12, 2002

Before KING, Chief Judge, and HIGGINBOTHAM and EMILIO M. GARZA, Circuit Judges.

KING, Chief Judge:

Defendants-Appellants Steven Stepp and Velocity Power Boats, Inc. appeal the district court's judgment denying their motion to dismiss Plaintiff-Appellee Louisiana Farm Bureau Insurance Company's complaint for lack of personal jurisdiction. Defendant-Appellants Thoroughbred Power Boats, Inc., Velocity Power Boats, Inc., and Steven Stepp appeal the district court's award of damages in favor of Plaintiff-Appellee George Randall Patin and Plaintiff-Appellee Louisiana Farm Bureau Insurance Company, arguing that the district court improperly failed to condition execution of the redhibition judgment in favor of these plaintiffs on tender to Thoroughbred of the boat that is the subject of the redhibition claim. For the following reasons, we AFFIRM the judgment of the district court, excepting that portion of the judgment awarding damages based on the redhibition claim. We VACATE the portion of the district court's judgment awarding damages based on the redhibition claim and REMAND the case to the district court for recalculation of damages consistent with this opinion.

## I.  Factual and Procedural Background

On May 6, 1995, George Randall Patin and Laura Wier Patin (the "Patins"), along with Catherine Irene Boley and Darin Lane Watkins ("Boley and Watkins"), were involved in a boating accident while operating a boat manufactured by Thoroughbred Power Boats, Inc. ("Thoroughbred") and purchased by the Patins from Thunder Marine, Inc. ("Thunder Marine").  The Patins filed suit against Thoroughbred and Thunder Marine in Louisiana state court alleging that the accident was caused by a defective condition of the boat and seeking recovery for the purchase price of the boat and recovery for personal injuries and other damages arising from the accident.  Boley and Watkins filed a separate suit against Thoroughbred, also in Louisiana state court, seeking recovery for damages arising from the accident.  The Patins' insurer, the Louisiana Farm Bureau Insurance Company ("the LFBIC"), filed a third state court action under subrogation to recover the amounts it paid to or on behalf of the Patins for damage to the boat, salvage and storage of the damaged boat, and loss of Mrs. Patin's jewelry in the accident.

On Thoroughbred's motion, all three suits were removed to federal district court based on diversity of citizenship.  The district court then consolidated the suits into the instant action.  Thoroughbred[1] filed answers to the Plaintiffs'

---

[1]    Thoroughbred agreed to assume the defense of Thunder Marine and to indemnify and hold Thunder Marine harmless from any judgment.

complaints.[2]  These answers did not question the Louisiana federal district court's authority to exercise personal jurisdiction over Thoroughbred.  The Plaintiffs then moved for partial summary judgment as to liability.  Thoroughbred did not respond to this motion.  Accordingly, on May 19, 1997, the district court granted partial summary judgment in favor of the Plaintiffs, finding that the boat was defective and that Thoroughbred was liable to the Plaintiffs in redhibition and under the Louisiana Products Liability Act.[3]

The Plaintiffs subsequently became aware that Thoroughbred had ceased doing business.  Accordingly, on July 30, 1997, the Plaintiffs filed two amended complaints naming Steven Stepp ("Stepp") and Velocity Power Boats ("Velocity") as additional defendants, alleging that Velocity was a "successor corporation" to Thoroughbred and that Velocity and Thoroughbred were both alter egos of Stepp.[4]  The first of these amended complaints, filed by the individual plaintiffs (i.e., the Patins and Boley and Watkins), was never served on either Stepp or Velocity, and was subsequently dismissed without prejudice.  However, the LFBIC, who filed the second amended complaint, sought and

---

[2]    The Patins, Boley and Watkins, and the LFBIC will be referred to collectively in this opinion as "the Plaintiffs."

[3]    At this time, the consolidated cases were assigned to Chief Judge Polozola.  The cases subsequently were transferred to Judge Melançon on June 30, 2000.

[4]    Thoroughbred, Stepp, and Velocity will be referred to collectively in this opinion as "the Defendants."

4

obtained Stepp's and Velocity's consent to waive service.[5]

Stepp and Velocity filed a motion to dismiss the LFBIC's amended complaint, arguing that the Louisiana federal district court lacked personal jurisdiction over them. On May 21, 1998, the district court denied Stepp and Velocity's motion to dismiss without prejudice, in order to allow for discovery.

On December 15, 1998, Stepp and Velocity filed a motion for summary judgment, seeking to dismiss the LFBIC's amended complaint for lack of personal jurisdiction, and, alternatively, seeking a judgment on the merits that there was insufficient evidence to raise a genuine issue of material fact regarding the appropriateness of piercing the corporate veil of Thoroughbred or imposing successor corporation liability upon Velocity. The district court found that it lacked personal jurisdiction over Stepp and Velocity.[6] However, the court held open the possibility that Stepp and Velocity might be subject to personal jurisdiction if those defendants were found liable (based on the doctrines of piercing the corporate veil and successor liability) for claims against Thoroughbred, because Thoroughbred waived its

---

[5] Thus, at this point in the litigation, the only defendant to the individual plaintiffs' actions is Thoroughbred, while Thoroughbred, Velocity, and Stepp are all defendants to the LFBIC's action.

[6] The court adopted this finding from a determination made by District Judge John Parker in a separate series of civil actions against Velocity. See Ruling on Motion to Dismiss, Civil Action Nos. 97-1092 and 98-402.

personal jurisdiction defense.[7]  The district court accordingly

denied Stepp and Velocity's motion for summary judgment, finding

that there were genuine issues of material fact regarding whether

Thoroughbred's corporate veil could be pierced and whether

Velocity could be held liable as a successor corporation of

Thoroughbred.

The court conducted the damages phase of the trial as a

bench trial on July 17 and 18, 2001.  At the close of the

Plaintiffs' evidence, the Defendants moved for judgment as a

matter of law pursuant to Federal Rule of Civil Procedure 52(c),

arguing: (1) that the LFBIC's action against Stepp and Velocity

should be dismissed for lack of personal jurisdiction; and in the

alternative, (2) that the LFBIC's action against Stepp and

Velocity should be dismissed because the Plaintiffs failed to

show that piercing the corporate veil or imposing successor

liability was appropriate.

The district court issued a memorandum ruling dated

September 21, 2000.  The district court held that, under the

choice of law rules of the forum state (i.e., Louisiana), the

substantive law of Florida governed the court's determinations

whether Velocity was a successor of Thoroughbred and whether the

corporate veil could be pierced.  The district court determined

---

[7]     Both parties agree that Thoroughbred waived its defense
to personal jurisdiction by filing an answer to the Plaintiffs'
original complaints without raising the issue of personal
jurisdiction.

6

that, under Florida law, Velocity was the successor of Thoroughbred because the transformation of Velocity and Thoroughbred constituted a "de facto merger" of the two corporations and because Velocity was merely a continuation of its predecessor, Thoroughbred. The district court also held that, under Florida law, it was appropriate to pierce the corporate veil and hold Stepp liable for the obligations of Velocity and Thoroughbred.[8] Accordingly, the district court

---

[8] In support of these conclusions, the district court entered, inter alia, the following findings of fact:

12. Until August, 1996, Stepp manufactured [pleasure] boats through Thoroughbred Power Boats, Inc.
13. In August, 1996, Thoroughbred ceased manufacturing and selling pleasure boats.
14. In August, 1996, Velocity Power Boats, Inc. began manufacturing and selling pleasure boats.
15. Beginning in August, 1996, Stepp manufactured his boats through Velocity.
...
19. The boats manufactured by Velocity after July 1996, were essentially the same boats that had been manufactured by Thoroughbred.
20. Thoroughbred and Velocity were wholly owned by Steven Stepp and his wife.
21. Steven Stepp and his wife were the only officers and board members of Thoroughbred and Velocity.
22. Thoroughbred and Velocity shared the same address and telephone numbers.
23. After August 1996 Steven Stepp leased the same property to Velocity that he had leased to Thoroughbred prior to August, 1996.
24. After August 1996, Thoroughbred "leased" its employees; and after July, 1996, many of the same "leased" employees became the "leased" employees of Velocity.
...
29. By check dated August 13, 1996, Velocity transferred $80,000 to Thoroughbred.

concluded that it was appropriate to impute Thoroughbred's waiver

of the defense of lack of personal jurisdiction to Velocity and

Stepp and to hold Velocity and Stepp liable for Thoroughbred's

obligations to the LFBIC.[9]

---

> 30.  On or about September 5, 1996, $60,000 was transferred from Velocity to Thoroughbred.
> ...
> 32.  Steven Stepp's testimony was less than credible, in particular, but not limited to his testimony accounting for the transfer of $80,000 and $60,000 from Velocity to Thoroughbred and his contention that he took certain corporate or economic action because his accountant or attorney told him to do so.
> 33.  Steven Stepp did not provide a satisfactory or believable rational [sic] for the transformation of Thoroughbred and Velocity in 1996.
> 34.  That Thoroughbred might have an obligation as a result of a judgment in this lawsuit was a factor in Steven Stepp's decision to discontinue the manufacture of boats through Thoroughbred and begin production through Velocity.
> ...
> 38.  Velocity is the successor corporation of Thoroughbred.
> 39.  The transformation of Velocity and Thoroughbred constituted a "de facto merger" of the two corporations.
> 40.  Velocity is merely a continuation of its predecessor, Thoroughbred.
> 41.  Velocity is and Thoroughbred was the alter ego of Steven Stepp.
> 42.  As there was improper conduct by defendants in the transformation of Velocity and Thoroughbred which was used to mislead creditors or avoid liabilities of Thoroughbred, the corporate veils of Velocity and Thoroughbred should be pierced.

[9]     Regarding the redhibition issue, the district court found that calculation of damages for the total loss of a boat was analogous to calculation of damages for the total loss of a

Pursuant to this ruling, on September 22, 2000, the district court entered judgment: (1) in favor of George Patin against Thoroughbred for the sum of $23,000 minus the salvage value of the boat; (2) in favor of Laura Patin against Thoroughbred for the sum of $2328; (3) in favor of Boley and Watkins against Thoroughbred for the sums of $3841 and $3836, respectively; and (4) in favor of the LFBIC against Thoroughbred, Velocity, and Stepp in the sum of $49,004. The district court also ordered the parties to file a joint stipulation as to the salvage value of the boat or to notify the court that such stipulation was not possible within twenty-one days after entry of judgment.

The parties subsequently proved unable to reach an agreement as to the salvage value of the boat. The district court accordingly instructed Magistrate Judge Stephen Riedlinger to conduct a hearing inquiring into the salvage value of the boat. On February 9, 2001, the magistrate judge issued a report that determined the salvage value of the boat to be $5000, and a recommendation that this amount be deducted from the award to George Patin. On June 6, 2001, the district court concurred with the magistrate judge's findings and ordered that the salvage value of the boat be set at $5000 and that the previously-entered judgment in favor of George Patin be reduced by that amount.

---

car. The court found that, under Louisiana law, when a boat is totally lost as a result of an accident, the owner is entitled to the market value of the boat before the accident, less salvage value, if any.

9

Thoroughbred, Velocity, and Stepp filed the instant appeal of the district court's judgment on October 20, 2000,[10] arguing: 1) that Stepp is not liable to the LFBIC because the corporate veils of Thoroughbred and Velocity cannot be pierced to reach Stepp; 2) that Velocity is not liable to the LFBIC because Velocity is not the successor corporation of Thoroughbred; 3) that Thoroughbred's waiver of the defense of lack of personal jurisdiction should not be imputed to Velocity and Stepp under the theories of piercing the corporate veil and successor corporation liability because Stepp and Velocity specifically alleged the defense of lack of personal jurisdiction in their first responsive pleading; and 4) that the district court erred in failing to condition execution of judgment as to George Patin and the LFBIC's redhibition claims on tender of the boat to Thoroughbred. We address each of these claims in turn.[11]

---

[10] The Defendants subsequently filed an amended notice of appeal on June 19, 2001, after the salvage value of the boat was determined. As both parties agree, this amended notice of appeal provides this court with appellate jurisdiction.

[11] Though ordinarily the issue of subject matter or personal jurisdiction must be considered by the court before other challenges "since the court must find jurisdiction before determining the validity of a claim," Moran v. Kingdom of Saudi Arabia, 27 F.3d 169, 172 (5th Cir. 1994) (quoting Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 449 (5th Cir. 1988)), because the factual determinations that we review in assessing the successor liability of Thoroughbred and the personal liability of Stepp are also the factual determinations critical to our adjudication of the personal jurisdiction issue, for the sake of convenience we address the successor liability and personal liability issues first. Cf. Spector v. LQ Motor Inns, Inc., 517 F.2d 278, 284 (5th Cir. 1975) (noting that when "jurisdictional and substantive issues are factually meshed" and

10

## II.  Did the district court err in piercing the corporate veil of Thoroughbred and Velocity to reach Stepp?

In this diversity case, we apply the choice of law rules of the forum state (i.e., Louisiana) to ascertain which state's law governs the substantive determination whether to pierce a corporate veil.  Marchesani v. Pellerin-Milnor Corp., 269 F.3d 481, 485 (5th Cir. 2001).  The Louisiana Supreme Court has not explicitly determined what law is applicable in evaluating whether to pierce the corporate veil of a defendant company in a products liability case.  Accordingly, this court must determine as best it can what the state's highest court would decide regarding the appropriate choice of law rule.  Howe v. Scottsdale Ins. Co., 204 F.3d 624, 627 (5th Cir. 2000).

In predicting how the Louisiana Supreme Court would decide this issue, this court will be guided by the decisions of state intermediate appellate courts unless other persuasive data indicates that the Louisiana Supreme Court would decide otherwise.  First Nat'l Bank of Durant v.Douglass, 142 F.3d 802, 809 (5th Cir. 1998).  At least one Louisiana intermediate appellate court has concluded that the law of the state of incorporation applies in determining whether it is appropriate to pierce the corporate veil.  See Quickick, Inc. v. Quickick Int'l, 304 So.2d 402, 406 (La. Ct. App. 1974).  A number of federal

---

"decision on the jurisdictional issues is dependent on decision of the merits" decision on the jurisdictional issue "should . . . be reserved until a hearing on the merits").  We note that both parties followed this logical structure in their briefing.

11

district courts have reached the same conclusion when interpreting Louisiana law in related contexts.  See, e.g., San Francisco Estates v. Westfeldt Bros., No. 97-1102, 1998 WL 12243, at *4 (E.D. La. Jan. 13, 1998) (holding that the substantive law of a company's state of incorporation should be used to determine the viability of its corporate structure); Powerup of Southeast La. Inc. v. Powerup U.S.A., Inc., 94-1441, 1994 WL 543631 (E.D. La. Oct. 5, 1994) (same); cf. Lone Star Indus., Inc. v. Redwine, 757 F.2d 1544, 1548 n.3 (5th Cir. 1985) (determining that the Louisiana Supreme Court would apply the law of the state of incorporation to determine the viability of a corporation after dissolution).

In light of these authorities, we agree with the district court's determination that the Louisiana State Supreme Court would most likely conclude that the law of the state of incorporation governs the determination when to pierce a corporate veil.  Accordingly, this court will apply the law of Florida (the state of incorporation for both Velocity and Thoroughbred) in assessing whether the district court erred in piercing the corporate veils of Velocity and Thoroughbred.  This court reviews a federal district court's decision to pierce the corporate veil for clear error.[12]  Huard v. Shreveport Pirates,

---

[12]  While Erie dictates that we apply Florida substantive law in determining whether it is appropriate to pierce the corporate veil in the instant case, "as a matter of independent federal procedure" we utilize our own federal standards of appellate review in evaluating the district court's findings.

12

Inc., 147 F.3d 406, 409 (5th Cir. 1998); see also Hollowell v. Orleans Reg'l Hosp. LLC, 217 F.3d 379, 385 (5th Cir. 2000) (noting that, while the determination whether to pierce the corporate veil is a factual conclusion subject to deferential review, disputes regarding the particular factfindings that are necessary to support a decision to pierce the corporate veil raise questions of law that this court reviews de novo).

The leading Florida case addressing the piercing of corporate veils is Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114 (Fla. 1984). In Dania Jai-Alai, the Florida Supreme Court held that in order to pierce the corporate veil of a defendant corporation, a plaintiff must prove both: (1) that the corporation is a "mere instrumentality" or alter ego of the defendant; and (2) that the defendant engaged in "improper conduct" in the formation or use of the corporation. See id. at 1120-21 (quoting Advertects, Inc. v. Sawyer Indus., Inc., 84 So.2d 21, 24 (Fla. 1955) (internal quotations omitted)); accord Bellairs v. Mohrmann, 716 So.2d 320, 322 (Fla. Dist. Ct. App. 1998). In defining what constitutes "improper conduct," the Florida Supreme Court explained that the corporate veil "will not be penetrated either at law or in equity unless it is shown that

---

Mid-America Pipeline Co. v. Lario Enters., Inc., 942 F.2d 1519, 1524 (10th Cir. 1991); cf. Tutor v. Ranger Ins. Co., 804 F.2d 1395, 1398 (5th Cir. 1986) (explaining that "[i]n a diversity case, we apply the [] federal standard of review to assess the sufficiency of the evidence in relation to the verdict, but we refer to state law to determine the kind of evidence that must be produced to support a verdict").

13

the corporation was organized or employed to mislead creditors or to work a fraud upon them."  Id. at 1120 (quoting Advertects, 84 So.2d at 23-24 (internal quotations omitted)).

Since Dania Jai-Alai, intermediate Florida appellate courts and federal courts applying Florida law have elaborated further on the meaning of "improper conduct."  In Steinhardt v. Banks, 511 So.2d 336, 339 (Fla. Dist. Ct. App. 1987), the Florida District Court of Appeal for the Fourth District offered a "workable formula for applying the reference to 'improper conduct.'"  The court stated:

> Florida decisions uniformly hold that courts will look through the screen of a corporate entity to the individuals who compose it in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose, ... or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose, or where the corporation was employed by the stockholders for fraudulent or misleading purposes, was organized or used to mislead creditors or to perpetrate a fraud upon them, or to evade existing personal liability.

Id. (quoting Tiernan v. Sheldon, 191 So.2d 87, 89 (Fla. Dist. Ct. App. 1966) (internal quotations omitted)).  This formulation has been cited with approval by other Florida courts and federal courts applying Florida law.  See, e.g., In re Warmus, 276 B.R. 688, 697 (S.D. Fla. 2002); In re Hillsborough Holdings Corp., 166 B.R. 461, 469 (Bankr. M.D. Fla. 1994); Acquisition Corp. of Am. v. Am. Cast Iron Pipe Co., 543 So.2d 878, 882 (Fla. Dist. Ct. App. 1989).

14

The district court in the instant case found: (1) that "Velocity is and Thoroughbred was the alter ego of Steven Stepp"; and (2) that "there was improper conduct by defendants in the transformation of Velocity and Thoroughbred which was used to mislead creditors or avoid liabilities of Thoroughbred." The district court thus concluded that "the corporate veils of Velocity and Thoroughbred should be pierced." The Defendants contend that the district court's finding that "improper conduct" occurred is clearly erroneous because both corporations (Velocity and Thoroughbred) "conducted their business publicly and without any subterfuge or deception" and because both corporations "complied with all necessary corporate formalities and filed all tax returns required by federal and state law." However, the Defendants point to no authority (and independent investigation reveals no authority) suggesting a corporate veil may not be pierced under Florida law when a corporation has conducted business publicly and complied with all necessary corporate formalities. Several courts interpreting Florida law have held that such factors (particularly observance of corporate formalities) can be <u>relevant</u> in assessing both alter ego status and improper conduct. <u>See, e.g.</u>, <u>Raber v. Osprey Alaska, Inc.</u>, 187 F.R.D. 675, 679 (M.D. Fla. 1999) ("Where the plaintiff pleads that a corporation is the instrumentality of the defendant and that the defendant engaged in improper conduct by failing to observe corporate formalities, by commingling funds of the

15

corporation with funds of other corporations and with personal funds, by using the assets of the corporation for his own personal use, by failing to adequately capitalize the corporation, and by using the corporate form to avoid liability, piercing the corporate veil is appropriate.") (internal citations and quotations omitted); In re Brickell Inv. Corp., 85 B.R. 164, 167 (Bankr. S.D. Fla. 1988) ("When determining whether an alter ego theory exists, several factors should be considered including; whether corporate formalities were observed; whether one corporation dominated another by virtue of its ownership, control, and congruency of established goals; and whether there was a transfer or commingling of assets between the corporations."). However, none of these courts suggest that observance of corporate formalities (or the lack thereof) should be determinative in assessing alter ego status or in determining whether improper conduct has occurred. Moreover, any such conclusion appears inconsistent with the Florida Supreme Court's elaboration of the corporate veil-piercing inquiry in Dania Jai Alai and with the Fourth District Court of Appeal's subsequent elaboration in Steinhardt.

Our own review of the record reveals that numerous factors support the district court's finding that the transformation of Thoroughbred to Velocity involved "improper conduct." These factors include, but are not limited to: the nature of Stepp's financial transactions with the two companies, the timing of

16

Stepp's actions in transferring Thoroughbred's activities to Velocity, and Stepp's admitted use of this transformation to avoid liability in the instant case. In addition, our review of the record also supports the district court's finding that Thoroughbred and Velocity are both alter egos of Stepp. Accordingly, the district court did not clearly err in piercing the corporate veil in the instant case.

### III. Did the district court err in finding that Velocity is subject to successor liability for the obligations of Thoroughbred?

Florida law likewise governs our substantive determination whether Velocity is subject to successor liability for the obligations of Thoroughbred. Florida follows the traditional corporate law rule that a successor corporation does not, as a general rule, assume the liabilities of a predecessor corporation. However, Florida also recognizes all four of the traditionally-accepted exceptions to this rule. Pursuant to these exceptions, the liabilities of a predecessor corporation can be imposed upon a successor corporation when: (1) the successor expressly or impliedly assumes obligations of the predecessor; (2) the transaction is a de facto merger; (3) the successor is a mere continuation of the predecessor; or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor. Bernard v. Kee Mfg. Co., Inc., 409 So. 2d 1047, 1049 (Fla. 1982).

17

The district court determined that Velocity should be held liable for the obligations of Thoroughbred under two of these exceptions. The court concluded: (1) that "Velocity is merely a continuation of its predecessor, Thoroughbred," and (2) that "[t]he transformation of Velocity and Thoroughbred constituted a 'de facto merger' of the two corporations." We need address only the first of these exceptions.[13]

The applicability of these exceptions to the rule against successor liability is generally treated as an issue of fact by this court and our sister circuits. See, e.g., Frank Ix & Sons, Inc. v. Phillipp Textiles, Inc., 165 F.3d 32 (7th Cir. 1998) (table decision) available at 1998 WL 709463, at *5 (noting that imposing liability on a successor corporation based on fraudulent intent to escape liability "involves . . . reviewing the district court's findings of fact, which we can only reverse for clear error"); Ed Peters Jewelry Co., Inc., v. C & J Jewelry Co., Inc., 124 F.3d 252, 269 (1st Cir. 1997) (explaining that "the 'mere continuation' inquiry is multifaceted, and normally requires a cumulative, case-by-case assessment of the evidence by the factfinder"); Mozingo v. Correct Mfg. Corp., 752 F.2d 168, 175-76 (5th Cir. 1985) (treating the determination whether a successor corporation should be held liable for the obligations of its

---

[13] While the de facto merger exception and the mere continuation exception are related and have similar characteristics, most Florida courts have treated them as separate theories. See Bud Antle, Inc. v. E. Foods, Inc., 758 F.2d 1451, 1457 (11th Cir. 1985) (listing cases).

18

predecessor on a "continuity of enterprise" theory as a question of fact for the jury).  Accordingly, we review the district court's finding that Velocity is a "mere continuation" of Thoroughbred for clear error.  However, to the extent that the parties dispute the findings required by Florida law to support a determination of successor liability, such disputes present legal questions that we review de novo.  Cf. Hollowell, 217 F.3d at 385 (noting that, while the determination whether to pierce to corporate veil is a factual conclusion subject to deferential review, disputes regarding the particular factfindings that are necessary to support the conclusion that piercing is appropriate raise questions of law subject to de novo review).

The Florida Supreme Court has not significantly elaborated on the nature of the "mere continuation" exception to the general rule against successor liability.  Accordingly, we turn to decisions by state intermediate appellate courts and federal courts interpreting Florida law for guidance in predicting what elements the Florida Supreme Court would find necessary to invoke this exception.

"The concept of continuation of business arises where the successor corporation is merely a continuation or reincarnation of the predecessor corporation under a different name." Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 630 (11th Cir. 1996) (quoting Amjad Munim, M.D., P.A. v. Azar, 648 So. 2d 145, 154 (Fla. Dist. Ct. App. 1994) (internal citations and

19

quotations omitted)).  In other words, a "mere continuation of business" will be found where the purchasing corporation is merely a "new hat" for the seller with the same or similar management and ownership.  <u>Bud Antle, Inc. v. E. Foods, Inc.</u>, 758 F.2d 1451, 1458 (11th Cir. 1985) (interpreting the same "mere continuation" exception under Georgia law).  Under Florida law, "a 'mere continuation of business' will be found where one corporation is absorbed by another, as evidenced by an identity of assets, location, management, personnel, and stockholders." <u>Sculptchair</u>, 94 F.3d at 630; <u>accord</u> <u>Azar</u>, 648 So.2d at 154.

The district court in the instant case found: (1) that Thoroughbred and Velocity were both wholly owned by Steven Stepp and his wife; (2) that Steven Stepp and his wife were the only officers and board members of both Thoroughbred and Velocity; (3) that Thoroughbred and Velocity shared the same address and telephone numbers; and (4) that Stepp leased the same property and many of the same employees to both corporations.  These findings, which are supported by the record, demonstrate an identity of assets, location, management, personnel, and stockholders between Velocity and Thoroughbred, as required by the courts in <u>Sculptchair</u> and <u>Azar</u>.

The Defendants argue, however, that such findings are insufficient to support the conclusion that Velocity is a "mere continuation" of Thoroughbred.  Relying on the Eleventh Circuit's decision in <u>Bud Antle</u>, the Defendants contend that all four

20

exceptions to the traditional corporate law rule prohibiting successor liability require a <u>transfer</u> of assets from the predecessor corporation to the successor corporation.  <u>See</u> 758 F.2d at 1457 ("All four of these exceptions require a transfer of assets in order to hold the acquiring corporation liable.").  Because the district court failed to explicitly find that a <u>transfer</u> of assets occurred in the instant case, the Defendants maintain that the mere continuation exception cannot apply in the instant case.

We need not determine whether Florida law requires a "transfer of assets" (as suggested by the <u>Bud Antle</u> court), or merely an "identity of assets" (as suggested by the <u>Sculptchair</u> and <u>Azar</u> courts) to support application of the mere continuation exception.  To the extent that there is a meaningful distinction between these two concepts, we assume without deciding that Florida law requires a <u>transfer</u> of assets.  We further find that the district court's detailed factual findings, supported by ample evidence in the record, demonstrate the existence of such a transfer of assets in the instant case.

The district court found, <u>inter alia</u>, that Stepp leased the same equipment to Velocity that he had leased to Thoroughbred, that Velocity "leased" many of the same employees that Thoroughbred had previously leased, and that Velocity manufactured power boats under the same trade name that Thoroughbred had previously used.  The Defendants do not contest

the accuracy of these findings.  The crux of the Defendant's

position appears to be that, while the assets of Velocity and

Thoroughbred were substantially the same — including, but not

limited to, the companies' equipment, employees, and trade name —

no transfer of assets occurred because Thoroughbred never

directly sold any of these assets to Velocity.[14]  However, the

successor liability doctrine does not require evidence of such a

direct sale of assets from the predecessor to the successor for

there to be a "transfer of assets" between two corporations.

Initially, as a number of federal courts interpreting the

mere continuation exception have recognized, a "transfer of

assets" does not necessarily require a sale of assets.  See,

e.g., Kaiser Found. Health Plan of the Mid-Atlantic States v.

Clary & Moore, P.C., 123 F.3d 201, 207 (4th Cir. 1997) (applying

the "mere continuation" exception under Virginia law and

considering a lease of equipment and personnel from the

predecessor corporation to the successor corporation in assessing

whether the transfer of assets between the two entities involved

adequate consideration); Stoumbos v. Kilimnik, 988 F.2d 949, 961

---

[14]     Instead, the record reveals that Stepp engaged in a
complex series of transactions involving a web of companies (all
of which were solely owned and controlled by Stepp and/or other
members of his immediate family) that resulted in the indirect
transfers of assets from Thoroughbred to Velocity.  For example,
regarding the boat construction equipment, the record reveals
that Stepp purchased this equipment from Thoroughbred.  Stepp
then leased this equipment back to Thoroughbred for a short time.
He then leased the same equipment to Velocity when Thoroughbred
ceased operations, and ultimately sold the equipment to Velocity.

(9th Cir. 1993) (applying the "mere continuation" exception under Washington law and recognizing that liability under this exception extends "to transfers other than straightforward purchases" because holding otherwise would permit "unscrupulous businesspersons . . . to avoid successor liability and cheat creditors merely by changing the form of the transfer"); Florom v. Elliott Mfg., 867 F.2d 570, 574-75 (10th Cir. 1989) (interpreting Colorado law and recognizing that the four traditional exceptions to the rule against successor liability apply when a "predecessor sells or otherwise transfers all its assets to the successor") (emphasis added); State of New York v. N. Storonske Cooperage Co., Inc., 174 B.R. 366, 376 (Bankr. N.D.N.Y. 1994) (interpreting New York law, recognizing that the four traditional exceptions to the rule against successor liability apply "so long as there is some form of a 'transfer' of assets" and that "a literal 'purchase' of assets is not required to establish successor liability"); cf. NLRB v. Band-age, Inc., 534 F.2d 1, 5 (1st Cir. 1976) (explaining that "[t]he fact that the transfer [of assets] took the form of a lease rather than an outright sale is not of great significance" for purposes of determining successor liability in the labor law context). Similarly, the fact that a transfer of assets involves an intermediary rather than a direct transfer from predecessor to successor does not necessarily preclude application of the mere continuation exception, particularly when the intermediary is

23

under the control of or otherwise tied to the principals in both the predecessor and successor corporations.  Ed Peters Jewelry, 124 F.3d at 269-70.  Finally, the fact that the entirety of the predecessor's assets were not transferred to the successor does not render the mere continuation exception inapplicable.[15]  See, e.g., id. at 269.

In sum, in considering whether a "transfer of assets" has occurred, we do not think Florida courts would elevate form over substance.  Instead, we predict that the Florida Supreme Court would follow the courts in Ed Peters Jewelry and Kaiser Foundation and look to the true nature of the overall transaction in assessing whether a transfer of assets has occurred.  See id. at 270; accord Kaiser Found., 123 F.3d at 205.  In the instant case, both the district court's factual findings and the record support the existence of a transfer of assets between Thoroughbred and Velocity.  Accordingly, the district court did not clearly err in concluding that Velocity is a mere continuation of Thoroughbred and thus holding that Velocity is responsible for the obligations of Thoroughbred.[16]

---

[15]    It is important to clarify that this court is not suggesting that the nature of a transfer of assets, the directness of that transfer, or the extent of the assets transferred are not relevant factors in assessing the applicability of the mere continuation exception under Florida law.  We simply conclude that a transfer of assets can be found in the absence of a direct sale of all assets from predecessor to successor.

[16]    Because we affirm the district court's finding that Velocity is a mere continuation of Thoroughbred, we need not

24

## IV.  Can Thoroughbred's waiver of personal jurisdiction be imputed to Stepp and Velocity?

Whether in personam jurisdiction can be exercised over a defendant is a question of law subject to <u>de novo</u> review by this court.  <u>Dickson Marine, Inc. v. Panalpina, Inc.</u>, 179 F.3d 331, 335 (5th Cir. 1999).  In a diversity suit, a federal court has personal jurisdiction over a nonresident defendant to the same extent that a state court in that forum has such jurisdiction. <u>Wilson v. Belin</u>, 20 F.3d 644, 646 (5th Cir. 1994).  Accordingly, the district court can exercise personal jurisdiction over the Defendants in the instant case only if the Defendants are subject to personal jurisdiction in the Louisiana state courts.

Generally, this court conducts a two-prong analysis to determine if a state court may exercise personal jurisdiction over a nonresident defendant.  "First, we determine whether the long-arm statute of the forum state confers personal jurisdiction over the defendant.  Second, we ask whether the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." <u>J.R. Stripling v. Jordan Prod. Co., LLC</u>, 234 F.3d 863, 869 (5th Cir. 2000) (internal citations and quotations omitted).  However, because Louisiana's long arm statute is coextensive with the limits of due process, "the sole inquiry into jurisdiction over a nonresident [under

_____

evaluate whether Velocity might also be responsible for the obligations of Thoroughbred pursuant to the de facto merger theory of successor liability.

Louisiana law] is a one-step analysis of the constitutional due process requirements."  Petroleum Helicopters, Inc. v. Avco Corp., 834 F.2d 510, 514 (5th Cir. 1987).[17]

The district court adopted Judge Parker's finding that Stepp and Velocity would not ordinarily be subject to personal jurisdiction in Louisiana courts.  However, the court found that exercise of personal jurisdiction in the instant case was nonetheless appropriate because Thoroughbred's consent to personal jurisdiction could be imputed to its alter ego (Stepp) and its successor (Velocity).  While the Defendants do not dispute that Thoroughbred waived any objection to personal jurisdiction by making a general answer to the Plaintiffs' complaints without raising personal jurisdiction as a defense, the Defendants contend that this waiver cannot be imputed to Stepp or Velocity.  They point out that both Stepp and Velocity pleaded lack of personal jurisdiction in their first responsive pleadings, and they maintain that Stepp and Velocity lack the requisite minimum contacts with the State of Louisiana to satisfy the requirements of due process.  In support of their contention that personal jurisdiction cannot be "imputed" under these

---

[17]     The constitutional due process analysis for personal jurisdiction imposes two requirements.  First, the defendant must have sufficient minimum contacts with the forum state to comport with "traditional notions of fair play and substantial justice." See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  Second, there must be reasonably adequate notice to afford the party an opportunity to defend.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 n.17 (1985).

circumstances, the Defendants rely on language in the Supreme Court's opinion in <u>Rush v. Savchuk</u>, 444 U.S. 320, 332 (1980), suggesting that, while "the parties' relationships with each other may be significant in evaluating their ties to the forum," the due process requirements of <u>International Shoe</u> "must be met as to each defendant over whom a state court exercises jurisdiction."

This language in <u>Rush</u>, however, does not preclude us from imputing the jurisdictional contacts of a predecessor corporation to its successor corporation or individual alter ego. As the Plaintiffs correctly point out, federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.[18]   The theory underlying

---

[18]     <u>See, e.g.</u>, <u>Howard v. Everex Sys., Inc.</u>, 228 F.3d 1057, 1069 n.17 (9th Cir. 2000) ("Although jurisdiction over a subsidiary does not automatically provide jurisdiction over a parent . . . where the parent totally controls the actions of the subsidiary so that the subsidiary is the mere alter ego of the parent, jurisdiction is appropriate over the parent as well."); <u>Minnesota Mining & Mfg. Co. v. Eco Chem Inc.</u>, 757 F.2d 1256, 1265 (Fed. Cir. 1985) (finding that the exercise of personal jurisdiction over a successor corporation with no ties to the forum state was appropriate when the successor corporation was a "mere continuation" of the predecessor corporation and exercise of personal jurisdiction would have been appropriate over the predecessor); <u>Marine Midland Bank, N.A. v. Miller</u>, 664 F.2d 899, 903 (2d Cir. 1981) (finding that the fiduciary shield doctrine, which prevents courts from imputing the jurisdictional contacts

these cases is that, because the two corporations (or the corporation and its individual alter ego) are the <u>same entity</u>, the jurisdictional contacts of one <u>are</u> the jurisdictional contacts of the other for the purposes of the <u>International Shoe</u> due process analysis.  See, e.g., <u>Lakota Girl Scout Council</u>, 519 F.2d at 637 (explaining that "if the corporation is [the individual defendant's] alter ego, its contacts are his and due process is satisfied").

Only a few federal courts have specifically considered the related question whether a successor corporation is bound by its predecessor corporation's <u>waiver</u> of personal jurisdiction (or, similarly, whether an individual is bound by his or her corporate alter ego's waiver of personal jurisdiction).  However, those courts have uniformly found that it is consistent with due process to impute a corporation's waiver of personal jurisdiction

---

of corporations to their stockholders, is inapplicable when the corporation is a "mere shell" for the individual stockholder); <u>Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.</u>, 519 F.2d 634, 637-38 (8th Cir. 1975) (finding that the chief executive officer of a corporation was subject to in personam jurisdiction based on the corporation's activities in the forum state when the evidence indicated that the corporation was merely the alter ego of the chief executive officer); <u>Huth v. Hillsboro Ins. Mgmt., Inc.</u>, 72 F. Supp.2d 506, 510 (E.D. Pa. 1999) (holding that the acts of a predecessor corporation may be attributed to its successor for purposes of determining whether jurisdiction over the successor is proper); <u>Kinetic Instruments, Inc. v. Lares</u>, 802 F. Supp. 976, 985 (S.D.N.Y. 1992) ("It is clear that if a court has jurisdiction over a corporation, it may obtain jurisdiction over a corporate officer or shareholder by disregarding the corporate entity.").

to its successor (or its individual alter ego),[19] for the same reasons that imputation of jurisdictional contacts is appropriate.  As the Packer court explained, imputing a corporation's consent to personal jurisdiction to its individual alter ego is consistent with the underlying rationale justifying piercing of the corporate veil.  959 F. Supp. at 203.  When a corporation is deemed the "alter ego" of an individual, then those entities are considered to be one and the same under the law: "the corporation's acts must be deemed to be [the individual's] own."  Id.  Accordingly, just as a corporation that has previously submitted to the jurisdiction of a court cannot subsequently object to that court's exercise of jurisdiction on due process grounds, see Fed. R. Civ. P. 12(h), an individual

---

[19]    See, e.g., Hale Propeller, L.L.C. v. Ryan Marine Prods. PTY., LTD., 98 F. Supp. 2d 260, 264-65 (D. Conn. 2000), aff'd, __ F.3d __ (Fed. Cir. June 5, 2002) (table decision), available at 2002 WL 1218028 (acknowledging that an individual could be bound by his corporate alter ego's waiver of personal jurisdiction); Totalplan Corp. of Am. v. Lure Camera, Ltd., 613 F. Supp. 451, 458 (W.D.N.Y. 1985) (finding that a corporation's waiver of personal jurisdiction could be imputed to its shareholders when piercing of the corporate veil was appropriate because "it would be inapropos to allow the company effectively to negate its waiver"); Mi-Jack Prods., Inc. v. The Taylor Group, Inc., No. 96-C-7850, 1997 WL 441796, at *4 (N.D. Ill. 1997) (holding that a parent corporation's waiver of personal jurisdiction could be imputed to its subsidiary if the subsidiary could be shown to be only an alter ego of the parent); cf. Packer v. TDI Sys., Inc., 959 F. Supp. 192, 202 (S.D.N.Y. 1997) (holding that "[a] corporation's consent to jurisdiction under a forum selection clause can be applied to obtain jurisdiction over an individual officer by disregarding the corporate entity under the doctrine of piercing the corporate veil").

29

alter ego of a corporation that has waived personal jurisdiction cannot subsequently attempt to negate that waiver.

Similarly, imputing a predecessor corporation's waiver of personal jurisdiction to its successor corporation when the successor is a "mere continuation" of the predecessor is also consistent with the principles underlying this exception to the general rule against successor liability.  The premise underlying the "mere continuation" exception to the rule against successor liability is that the successor corporation is, in fact, the same corporate entity as the predecessor corporation, simply wearing a "new hat."  Bud Antle, 758 F.2d at 1458; Azar, 648 So.2d at 154. Under such circumstances, if the predecessor corporation has already submitted to the jurisdiction of a court, it cannot subsequently object to that jurisdiction on due process grounds simply because it has put on its "new hat."  "Any other ruling would allow corporations to immunize themselves [from liability] by formalistically changing their titles."  Duris v. Erato Shipping, Inc., 684 F.2d 352, 356 (6th Cir. 1982).

Accordingly, we conclude that a successor corporation that is deemed to be a "mere continuation" of its predecessor corporation can be bound by the predecessor corporation's voluntary submission to the personal jurisdiction of a court. Similarly, an individual can be bound by a corporation's voluntary submission to the personal jurisdiction of a court when the corporate veil has been pierced and the corporation is deemed

30

to be the "alter ego" of that individual.  Consequently, in the
instant case, because Thoroughbred, Stepp, and Velocity are
functionally the same entity in the eyes of the law, jurisdiction
over that entity is appropriate after it has (wearing any one of
its "hats") voluntarily submitted to the personal jurisdiction of
the court by making a general appearance.[20]

### V. Did the district court calculate the correct redhibition remedy under Louisiana law?

Both parties agree that Louisiana law is applicable to the
Plaintiffs' redhibition claim.  Redhibition is an avoidance of
sale on account of a defect in the manufacture or design of a
thing sold "which renders it either absolutely useless, or its
use so inconvenient and imperfect, that it must be supposed that
the buyer would not have purchased it, had he known of the vice."
La. Civ. Code Ann. art. 2520 (West 1973).[21]  Typically, the

_____

[20]    Accordingly, contrary to the Defendants' suggestion, we
need not conduct a due process inquiry into the district court's
exercise of jurisdiction over Thoroughbred, Velocity, or Stepp
(or instruct the district court to do so on remand).  The fact
that Thoroughbred, Velocity, and Stepp may not have had the
requisite "minimum contacts" with Louisiana to support exercise
of personal jurisdiction by Louisiana courts (or federal courts
sitting in Louisiana) is irrelevant in the instant case.
Personal jurisdiction is an individual right that is subject to
waiver. See Ins. Corp. of Ireland, LTD v. Compagnie des Bauxites
de Guinee, 456 U.S. 694, 704 (1982).  Once that right is waived,
a party that has voluntarily submitted to the jurisdiction of a
court cannot subsequently object to that court's exercise of
jurisdiction on due process grounds.

[21]    The sections of the Louisiana Civil Code governing
sales were amended in 1993.  See 1993 La. Sess. Law Serv. 841 § 1
(West).  These amendments became effective on January 1, 1995.
See id.  Because the boat at issue in the instant case was
purchased in 1993, the law in effect at that time governs and all

31

remedy contemplated in a redhibitory action under Louisiana law is full recission of the sale.  Recission "requires the seller to return the purchase price and the buyer to return the thing purchased, thus placing the parties in the positions they held before the sale."  Lindy Invs., LP v. Shakertown Corp., 209 F.3d 802, 806 (5th Cir. 2000) (citing Capitol City Leasing Corp. v. Hill, 404 So.2d 935, 939 (La. 1981)).  However, when a redhibitory defect merely diminishes the product's value or utility rather than rendering the product totally unfit for its intended use, "a party can recover quanti minoris damages for a reduction in the purchase price without having to return the defective product."  Id.

The trial court "has discretion to award either rescission or quanti minoris in a successful redhibitory action, but cannot award both."  Id. (internal citations and quotations omitted). When a trial court awards recission, the appropriate measure of damages is restoration of the purchase price, plus reimbursement of reasonable expenses occasioned by the sale and expenses incurred in the preservation of the item, see, e.g., La. Civ. Code Ann. art. 2531 (West 1973); Poché v. Bayliner Marine Corp., 93-721 (La. App. 5 Cir. 2/9/94), 632 So.2d 1170, 1174),[22] minus

---

references herein will use the language of the articles prior to revision.  See Fly v. All-Star Ford Lincoln Mercury, Inc., 95-1216 (La. App. 1 Cir. 8/21/96), 690 So.2d 759, 761 n.2.

[22]    In addition to restitution of the purchase price and repayment of expenses (including reasonable attorney fees), a bad faith seller is also answerable for other damages.  See La. Civ.

any appropriate discount for the value the buyer received from use of the item, <u>see</u> La. Civ. Code Ann. art. 2531 (West 1973); <u>Alexander v. Borroughs</u>, 359 So.2d 607, 610 (La. 1978).[23]   <u>See also</u> <u>Lindy Invs.</u>, 209 F.3d at 809.  When a trial court makes a <u>quanti</u> <u>minoris</u> award, the appropriate measure of damages is the difference between the actual selling price and the price that a reasonable buyer and seller would have agreed upon if they had both known of the defects.  <u>See</u> <u>Fly</u>, 690 So.2d at 763.  Factors to consider in making a <u>quanti</u> <u>minoris</u> award include "the number of defects, the frequency and length of attempted repairs of the defects, the inconvenience associated with the repairs, the actual damage, if any, caused by the defects, the actual cost of repairs and the curtailed use of the thing due to its defects." <u>Id.</u>; <u>accord</u> <u>Robert v. Bayou Bernard Marine, Inc.</u>, 514 So.2d 540, 546-47 (La. Ct. App. 1987).

The parties dispute whether the district court calculated the appropriate measure of damages in the instant case.  Indeed,

---

Code Ann. art. 2545 (West 1973).  These damages can include, for example, non-pecuniary damages for mental anguish, aggravation and inconvenience.   <u>See</u> <u>Kent v. Cobb</u>, 35-663 (La. App. 2 Cir. 3/8/02), 811 So.2d 1206, 1215.


[23]    The <u>Alexander</u> court held that "credit for a purchaser's use of a product may be proper in certain instances, even in favor of a bad faith seller," but clarified that "[c]ompensation for the buyer's use . . . ought not be granted automatically by the courts; even the value of an extensive use may be overridden by great inconveniences incurred because of the defective nature of the thing and constant interruptions in service caused by the seller's attempts to repair." 359 So.2d at 610.

the parties apparently disagree as to the type of award (recission or _quanti_ _minoris_) that the district court was attempting to make. The Defendants contend that the district court was attempting to award a recission and that the court thus erred in failing to instruct the Plaintiffs to return the boat to the Defendants. The Plaintiffs argue in response that the district court was actually attempting to award _quanti_ _minoris_ damages (i.e., a reduction in the purchase price); thus the district court correctly determined that the Plaintiffs were not required to return the boat to the Defendants.

The district court's factual findings and conclusions of law reveal that the court awarded the Plaintiffs "the market value of the boat before the accident, less salvage value, if any." The district court apparently relied upon cases addressing the measure of damages for destruction of an automobile or boat by a third party tortfeasor, including _Phelps v. White_, 94-267 (La. App. 3 Cir. 10/5/94), 645 So.2d 698, and _Coleman v. Victor_, 326 So.2d 344 (La. 1976), in calculating this redhibition award. This conceptualization of the damage award ignores the unique nature of a redhibition claim.

Redhibition is an _avoidance of sale_. Accordingly, the goal of the remedy is to return the injured party to the position he or she was in before the sale occurred, _not_ to the position he or she was in before his or her injury, as in a tort remedy. _See Lindy Invs._, 209 F.3d at 806. These distinct inquiries will not

necessarily produce the same measure of damages. For example, it appears in the instant case that the district court included the value of the Patins' improvements to the boat, as well as any post-sale appreciation or depreciation in the value of the boat, in calculating the "market value" of the boat. However, improvements made by the buyer to a purchased item and post-sale fluctuations in the market value of that item are not necessarily relevant in calculating a damage award pursuant to a redhibition claim, as that award is designed to rescind the sale and accordingly revolves around the <u>purchase price</u> of the boat.

While it appears that the Plaintiffs are correct that the district court was actually attempting to award some form of <u>quanti</u> <u>minoris</u>-type damages in the instant case rather than a complete recission of sale, the reasoning expressed by the district court in its conclusions of law indicate that the court most likely erred in its calculation of the <u>quanti</u> <u>minoris</u> award. Because the district court's factual findings do not enable this court to determine what the correct award should be, a remand to the district court is necessary to recalculate the appropriate award.

## VI.  Conclusions

For the foregoing reasons, we AFFIRM the judgment of the district court in all respects excepting that portion of the judgment awarding damages based on the redhibition claim (i.e., awarding damages to George Patin against Thoroughbred and

35

awarding damages to the LFBIC against Thoroughbred, Velocity, and Stepp).  We VACATE the portion of the district court's judgment awarding damages based on the redhibition claim and REMAND to the district court for recalculation of damages consistent with this opinion.  Costs shall be borne by Appellants.