# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 30, 2011

No. 10-30211

Lyle W. Cayce
Clerk

ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND, also known as Tulane University; DAVID H. COY, Ph.D.,

Plaintiffs - Appellants

v.

IPSEN, S.A.; IPSEN PHARMA SAS, formerly named Societe de Conseils de Recherche et d'applications Scientifiques SAS,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:08-cv-5096

Before SMITH, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

The Administrators of the Tulane Educational Fund ("Tulane") and Dr. David Coy (collectively, "Plaintiffs") brought suit against Ipsen, S.A. ("Ipsen"), Ipsen Pharma SAS ("Ipsen Pharma")[1] and Biomeasure, Inc. ("Biomeasure"),

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Ipsen Pharma is the successor-by-merger of Société Conseils, de Recherche et d'Applications Scientifiques, S.A.S. ("SCRAS"), an originally named defendant. For purposes of clarity, "Ipsen Pharma" will be used to refer both to SCRAS and Ipsen Pharma SAS.

No. 10-30211

alleging breach of contract and other claims arising from Tulane's dealings with Biomeasure. Ipsen and Ipsen Pharma, two parent companies of Biomeasure, moved for dismissal for a lack of personal jurisdiction, which the district court granted after limited discovery. We AFFIRM.

## I. Background

This dispute involves the rights to a drug called Taspoglutide, or BIM-51077, which Plaintiffs assert could potentially be critical in treating diabetes. Plaintiffs entered into an Amended and Restated Research Funding Agreement ("RFA") with Biomeasure in 1990.[2] The agreement was amended in 1997 and 1998. Plaintiffs claim that Taspoglutide was developed by Dr. Coy pursuant to research performed under the RFA. Tulane and Biomeasure filed a joint patent application for certain compounds resulting from this research on December 7, 1998. Tulane and Biomeasure entered into an agreement under which Biomeasure had exclusive license to compounds developed under the joint patent ("Licensing Agreement"). On the same day that Tulane and Biomeasure filed the patent application, Biomeasure filed another "Biomeasure only" application, that did not include Tulane or Dr. Coy. The Biomeasure-only application resulted in United States Patent #6,903,186 (the "'186 patent"), which was subsequently assigned to Ipsen Pharma. Ipsen Pharma then proceeded to grant exclusive rights to develop and market BIM-51077 to a Swedish pharmaceutical company. Plaintiffs claim that the patenting and licensing of the '186 patent violated the terms of the RFA and the Licensing Agreement, and brought seven related causes of action against Biomeasure, Ipsen Pharma, and Ipsen. Ipsen and Ipsen Pharma moved to dismiss the claims against them for lack of personal jurisdiction.

---

[2] Neither Ipsen nor Ipsen Pharma was a party to the RFA.

No. 10-30211

Biomeasure is a Massachusetts corporation, with its principal place of business in Milford, Massachusetts. Biomeasure is a wholly-owned subsidiary of SUTREPA, S.A.R.L. ("SUTREPA"), a French corporation that is, in turn, jointly owned by Ipsen and Ipsen Pharma, two French companies having their respective offices in France. Ipsen's direct and indirect affiliates, including Biomeasure, collectively comprise the "Ipsen Group" of companies. Through SUTREPA, Ipsen and Ipsen Pharma indirectly own 100% of Biomeasure.

The district court initially determined that Plaintiffs failed to demonstrate personal jurisdiction over Ipsen and Ipsen Pharma, but allowed them to conduct limited jurisdictional discovery and file a supplemental memorandum. After discovery and further briefing, the district court granted Ipsen and Ipsen Pharma's motions and dismissed the case without prejudice, ruling that Plaintiffs still had not adequately demonstrated that personal jurisdiction existed, with respect to both Ipsen and Ipsen Pharma. Plaintiffs timely appealed.

## II. Analysis

*A. This court has jurisdiction to hear the appeal*

Although neither party discusses whether the existence of patent issues deprives this court of jurisdiction over Plaintiffs' appeal, *see* 28 U.S.C. § 1295(a) (stating that the Federal Circuit has exclusive jurisdiction over appeals arising under § 1338), this court has a duty to consider its jurisdiction *sua sponte. See Christoff v. Bergeron Indus., Inc.*, 748 F.2d 297, 298 (5th Cir. 1984). We conclude that we do have jurisdiction. Even where federal jurisdiction is solely premised on 28 U.S.C. § 1338, we have held that we may determine whether the district court's exercise of jurisdiction was proper. *See Scherbatskoy v. Halliburton Co.*, 125 F.3d 288, 291 (5th Cir. 1997) ("[A] regional circuit court can determine its own jurisdiction and supervise the exercise of jurisdiction by the district courts within its circuit."). Therefore, we have jurisdiction here, where the complaint

only avers federal jurisdiction premised on diversity of citizenship, 28 U.S.C. § 1332, and the only issue before the court is whether the district court correctly determined that it could not exercise personal jurisdiction over Ipsen and Ipsen Pharma. We thus proceed to the merits of the appeal.

*B. The district court correctly concluded that it does not have jurisdiction over Ipsen and Ipsen Pharma*

A court has personal jurisdiction over a nonresident defendant if the exercise of jurisdiction is allowed by the forum state's long-arm statute, and the exercise of jurisdiction comports with due process. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999). In Louisiana, these limits are coextensive. *Jackson v. Tanfoglio Giuseppe S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).

As noted, the district court determined that it could not exercise jurisdiction over Ipsen and Ipsen Pharma. Where the facts are undisputed, review is *de novo*. *See Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). The allegations in the complaint must be taken as true, except where controverted by affidavit, and the court should resolve conflicts in favor of the party seeking to establish jurisdiction. *See Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). To prevail at this stage of litigation, Plaintiffs only need to make a prima facie showing of jurisdiction. *See Walk Haydel*, 517 F.3d at 241; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 217 (5th Cir. 2000).

Plaintiffs' jurisdictional arguments require a showing that Biomeasure's Louisiana contacts can be attributed to Ipsen or Ipsen Pharma.[3] This court

---

[3] Although Plaintiffs recite facts of other contacts that Ipsen has in Louisiana, they do not argue in the body of their brief that Ipsen is subject to general jurisdiction in Louisiana, and thus have waived that argument. *Cf. Gen. Elec. Capital Corp. v. Acosta* (*In re Acosta*), 406 F.3d 367, 374-75 (5th Cir. 2005) ("An assertion that a ruling is being appealed, in the absence of any argument in the body of the brief supporting the appeal, does not preserve the issue on appeal."). Assuming *arguendo* the issue were preserved, the evidence shows that the contacts

No. 10-30211

begins with a presumption that a subsidiary, even a wholly-owned subsidiary, is independent of its parent company for jurisdictional purposes. *See Dickson*, 179 F.3d at 338. This presumption can be overcome by clear evidence. *Id.* "Invariably such clear evidence requires an additional or a 'plus' factor, 'something beyond the subsidiary's mere presence within the bosom of the corporate family.'" *Id.* (quoting *Donatelli v. National Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990)).

1. Ipsen

Plaintiffs' arguments to establish a "plus factor" over Biomeasure can be divided into two basic categories: (1) Ipsen's control over Biomeasure established a prima facie alter-ego relationship, and (2) the public image of Biomeasure was such that Biomeasure served as Ipsen's agent, actually or impliedly.

a. *Biomeasure is not an Alter-Ego of Ipsen*

Plaintiffs argue that the degree of control that Ipsen exerts over Biomeasure amounts to a prima facie showing of alter-ego.[4] The district court examined the two corporations' relationship under the factors this court established in *Hargrave v. Fibreboard*, 710 F.2d 1154, 1159-61 (5th Cir. 1983):

> (1) [the] amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they

---

are not Ipsen's but rather those of another Ipsen subsidiary, Tercica, Inc. ("Tercica"). Plaintiffs have made no showing that Tercica's contacts should be imputed to Ipsen, which, as discussed below, is required.

[4] As noted above, Biomeasure is not directly owned by Ipsen, but rather is a subsidiary of SUTREPA. Ipsen and Ipsen Pharma, relying on *Alpine View*, 205 F.3d at 218, and *Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d 841, 856 (5th Cir. 2000), argue that Ipsen and Ipsen Pharma can only be alter egos of Biomeasure to the extent that SUTREPA is an alter ego of each. However, those cases construe Texas law. Plaintiffs point out that under Louisiana law, at least one appellate court has suggested that where a showing of control amounting to alter ego is shown, the court may disregard an intermediary corporation. *See Brown v. Auto. Cas. Ins. Co.*, 644 So.2d 723, 727 (La. Ct. App. 1994). Because we conclude that Plaintiffs have not met their burden regardless of whether SUTREPA is accounted for, we need not decide that issue here.

5

No. 10-30211

have common officers and directors; (4) did they observe corporate
formalities; (5) did they maintain separate accounting systems; (6)
did the parent exercise complete authority over general policy; (7)
did the subsidiary exercise complete authority over daily operations.

*Dickson*, 179 F.3d at 339.[5]

In its analysis, the district court found that Ipsen indirectly owns all of
Biomeasure's stock, that the two corporations have a number of common officers
and directors, and that Ipsen exercises substantial control over Biomeasure's
general policy decisions. However, it determined that these factors did not
establish a prima facie showing of alter ego. *Cf. Hargrave*, 710 F.2d at 1160
("We have noted often that 100% stock ownership and commonality of officers
and directors are not alone sufficient to establish an alter ego relationship
between two corporations."); *id.* at 1161 ("The policymaking authority held and
exercised by [the parent corporation] was no more than that appropriate for a

---

[5] Although *Hargrave* was suggested to the district court and our court as the
appropriate standard, and certainly is informative regarding imputed jurisdictional contacts
among corporations, the general use of the *Hargrave* factors in Louisiana diversity cases
should be discouraged. Where federal jurisdiction is based on diversity of citizenship, this
court applies the applicable state law to determine whether contacts should be imputed to a
parent company due to an alter-ego or agency relationship. *See Jackson*, 615 F.3d at 587
(noting that either Louisiana law or Italian law would apply in determining whether
companies were alter egos for purposes of establishing personal jurisdiction). The *Hargrave*
factors construe Texas state law. *See Hargrave*, 710 F.2d at 1161 & n.4 ("[W]e do not believe
that [the plaintiff] has demonstrated that [the parent company] possessed and exercised the
nature and degree of control over [the subsidiary] necessary to fuse the two corporations for
purposes of the Texas long-arm statute."). This court has also adopted the *Hargrave* factors
in cases construing federal common law. *See Dickson*, 179 F.3d at 339. An alter ego analysis
in Louisiana diversity cases should be performed under factors enunciated under Louisiana
law. *See Jackson*, 615 F.3d at 587 (noting that factors to consider under Louisiana law include
"common ownership, directors and officers, employees, and offices; unified control; inadequate
capitalization; noncompliance with corporate formalities; centralized accounting; unclear
allocation of profits and losses between corporations; one corporation paying the salaries,
expenses or losses of another corporation; and undocumented transfers of funds between
entities"). However, we find that for the present purposes, the district court's analysis is
sufficient for appellate review. *Cf. Century Hotels v. United States*, 952 F.2d 107, 110 n.4 (5th
Cir. 1992) ("State and federal alter ego tests are essentially the same.").

sole shareholder of a corporation, and certainly not enough to warrant the extraterritorial exercise of jurisdiction over that shareholder[.]").

Plaintiffs argue that the district court's analysis understated the amount of control that Ipsen has over Biomeasure, particularly its conclusion that Ipsen does not exercise significant authority over Biomeasure's day-to-day activities. Significantly, Plaintiffs do not dispute the district court's finding that Biomeasure and Ipsen observed corporate formalities. Where a parent and subsidiary observe corporate formalities, the plaintiff has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parent. *See Jackson*, 615 F.3d at 588; *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990); *see also Access Telecomm., Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) ("[T]ypically, the corporate independence of companies defeats the assertion of jurisdiction over one by using contacts with the other.").

As noted, the district court found that Ipsen exercises significant control over Biomeasure's general policies, but no more than appropriate for a wholly-owned subsidiary. The evidence that Plaintiffs present to show Ipsen's control over Biomeasure can be divided into three categories: (1) evidence that Ipsen oversees Biomeasure's operations and research, (2) evidence that Ipsen exercises some control over Biomeasure's budgeting, and (3) evidence that Ipsen has an established purpose for Biomeasure.

Regarding oversight, Plaintiffs have provided some evidence that various "Operations Committees" within Ipsen have some degree of oversight over the research and operations of its subsidiaries. However, the descriptions of the these committees upon which Plaintiffs rely support the district court's finding that Ipsen controls Biomeasure's general policies, not its day-to-day operations. These groups "coordinat[e]" and make decisions regarding "organisational, budget and technical matters." The description of these groups is consistent

with the district court's observation that these groups "appear to provide general guidance to the entire group of Ipsen affiliates." *See Hargrave*, 710 F.2d at 1160 (stating that "selection of product lines, hiring and firing of [] officers, and approval of sizeable capital investments" are matters of general policy). Similarly, Plaintiffs' argument that some Biomeasure employees are members of these operating committees does not establish more than an appropriate level of control over Biomeasure's general policies.

Plaintiffs also argue that Ipsen controls day-to-day aspects of Biomeasure's budget. Notably, there is substantial evidence in the record that Biomeasure has significant control over its budget. Its president, Dr. Moreau, testified that Biomeasure "maintain[s] separate budgets for all of its expenses." He also testified that although Biomeasure receives general budget allocations from Ipsen, it has autonomy over what drugs to research and how to perform the research. To establish Ipsen's control over Biomeasure's finances, Plaintiffs rely primarily upon a practice known as "ring-fencing," a process of designating certain expenses to require approval from Ipsen's Executive Committee. However, Plaintiffs concede that ring-fencing only applies to certain budget items. Plaintiffs bear the burden of establishing that Ipsen's control over Biomeasure's budget is such that they functionally became "the same entity." *Jackson*, 615 F.3d at 586 (quoting *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)). To establish the scope of ring-fencing, Plaintiffs rely on a policy document stating that a company seeking to hire a professor for research assistance must get approval before engaging the professor. The mere fact that Ipsen exercises some budgeting control over Biomeasure is not enough to establish a prima facie case of alter ego. *See Hargrave*, 710 F.2d at 1160 (finding no jurisdiction where parent had "approval of sizeable capital investments); *see also United States v. Bestfoods*, 524 U.S. 51, 72 (1998) (noting that "monitoring of the subsidiary's performance, supervision of the subsidiary's

No. 10-30211

finance and capital budget decisions, and articulation of general policies and procedures" is "consistent with the parent's investor status").

Finally, Plaintiffs emphasize that "Biomeasure's primary purpose [is] to conduct research and development within the United States on behalf of Ipsen." To this end, Plaintiffs have presented evidence that Biomeasure has a patent assignment agreement with Ipsen Pharma under which it assigns all of its patents to Ipsen Pharma. Subsequently, most or all of Biomeasure's funding is provided by Ipsen Pharma or other Ipsen subsidiaries. Notably, these arguments focus on Ipsen Pharma, not Ipsen. Plaintiffs have not argued, and have not presented evidence that Ipsen and Ipsen Pharma are alter egos or that an agreement with Ipsen Pharma should otherwise be attributed to Ipsen. *Cf. Alpine View*, 205 F.3d at 218 (noting that to attribute activities of a subsidiary to a parent, an alter ego relationship between the subsidiary and the parent must be established); *Dickson*, 179 F.3d at 338 ("Although there is ample evidence of [affiliated] corporations having many dealings with each other, there is no evidence in the record of [the parent company] exercising control over [the subsidiaries].").

Assuming arguendo that the arrangement were attributed to Ipsen, it still does not establish an alter-ego relationship. Biomeasure and Ipsen Pharma appear to have an arrangement under which Ipsen Pharma finances Biomeasure's research in return for Biomeasure assigning its patents to Ipsen Pharma. As noted by the district court, Biomeasure entered into an advance pricing agreement ("APA") with the Internal Revenue Service ("IRS") which determined that under the terms of the APA, the compensation that Biomeasure receives from non-U.S. Ipsen subsidiaries is commercially reasonable and reflects arm's-length transactions. Therefore, this showing is not enough to establish a prima facie case of alter ego. To the extent that Plaintiffs' evidence

establishes that Biomeasure's purpose is to benefit Ipsen, that is in the nature of a parent-subsidiary relationship.

Plaintiffs have thus failed to show that Ipsen is an alter ego of Biomeasure.

### b. *Biomeasure is not an agent of Ipsen*

Furthermore, Plaintiffs have failed to show that Biomeasure acted as an agent of Ipsen for purposes of the RFA and Licensing Agreement. To establish agency, Plaintiffs rely heavily on the image put forth by Biomeasure and Ipsen, particularly Biomeasure's extensive use of the Ipsen trademark. As Plaintiffs argue, "Ipsen has told the world that Biomeasure is Ipsen. It cannot now deny that."

In Louisiana law, an agency relationship can be created through express authorization or by an implied appointment arising from apparent authority. *See Crescent City Marine v. M/V Nunki*, 20 F.3d 665, 668 (5th Cir. 1994). Though Plaintiffs make a bald assertion that Biomeasure was Ipsen's actual agent, they offer no evidence to support an express authorization for Biomeasure to act as Ipsen's agent with regard to the RFA or Licensing Agreement.

Plaintiffs' implied agency argument also fails. To establish implied agency in this case, Plaintiffs must show: (1) that Ipsen made some overture or inference directly to the Plaintiffs and (2) that Plaintiffs reasonably relied on Biomeasure's purported authority as a direct consequence of these representations. *See id*. at 669. Assuming arguendo that Plaintiffs could prevail on the first prong, they have provided no evidence of reliance by Tulane or Dr. Coy. Although Dr. Coy has declared that he believed Ipsen or Ipsen Pharma would finance the joint research, he has not stated at any point that his belief was founded on any representations or inferences made by Ipsen. Similarly, the mere fact that Dr. Coy met with Ipsen employees does not establish an agency relationship when the declaration does not state for what purposes he met with

Ipsen employees or that the employees represented to him that Biomeasure was acting on behalf of Ipsen.  Because Plaintiffs at no point assert reliance on representations made by Ipsen, their implied agency claim cannot succeed.

c. *Biomeasure's contacts with Louisiana cannot be imputed to Ipsen*

For the above reasons, the district court correctly determined that Biomeasure's contacts with Louisiana cannot be imputed to Ipsen.  This is consistent with other holdings of our court that even a significant amount of control is insufficient to impute contracts to a parent corporation where corporate formalities are observed.  *See Jackson*, 615 F.3d at 587 (finding that contacts could not be imputed where two companies were "operated in a way that their brands and products appear identical and their business relationships are deeply intertwined, . . .  shared office space, phone numbers, . . . officers and directors, [and the employees of a close business associate] testified that they . . . viewed [the companies] as one company"); *Dalton*, 897 F.2d at 1363.

2. Ipsen Pharma

a. *Ipsen Pharma is not an alter ego of Biomeasure*

The district court found that the only *Hargrave* factors that weighed in favor of asserting jurisdiction over Ipsen Pharma is that it indirectly owns Biomeasure's stock with Ipsen and that it shares common officers and directors with Biomeasure.

To establish an alter ego relationship between Biomeasure and Ipsen Pharma, Plaintiffs rely upon the APA, the fact that Biomeasure assigns its patents to Ipsen Pharma as a matter of course, and that  Biomeasure has an International Cash Pooling Agreement ("ICPA") with Ipsen Pharma.  As noted above, we find that the arrangement whereby Biomeasure assigns its patents to Ipsen Pharma in exchange for research funding under the terms of the APA does not establish an alter ego status, particularly in light of the IRS finding that the arrangement was commercially reasonable.

No. 10-30211

Under the ICPA, Biomeasure can borrow or deposit money with Ipsen Pharma.  However, the evidence shows that such loans are accounted for and credited to the appropriate Ipsen subsidiary.  Indeed, the evidence establishes that such loans accrue interest at a rate based upon the London Interbank Offered Rate.  This court has previously noted that "[t]he existence of intercorporate loans does not establish the requisite dominance, and in fact, interest-bearing loans suggest separation of corporate entities." *Alpine View*, 205 F.3d at 219; *see also Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459 (2d Cir. 1995) ("Courts have generally declined to find alter ego liability based on a parent corporation's use of a cash management system.").

We therefore find that Ipsen Pharma is not an alter ego of Biomeasure.

### b. *Biomeasure is not an agent of Ipsen Pharma*

Plaintiffs' attempt to establish an agency relationship between Ipsen Pharma and Biomeasure fails for essentially the same reasons that it failed with regard to Ipsen.  At no point do Plaintiffs establish an express authorization on behalf of Ipsen Pharma for Biomeasure to act as its agent regarding the RFA or the Licensing Agreement.  Furthermore, Plaintiffs have failed to assert reliance on any representations made by Ipsen Pharma.  For these reasons, Plaintiffs have failed to establish an agency relationship between Ipsen Pharma and Biomeasure.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's dismissal without prejudice of all claims against Ipsen and Ipsen Pharma.