State of N.C. v. E.I. du Pont de Nemours & Co., 2021 NCBC 54.

STATE OF NORTH CAROLINA

CUMBERLAND COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 5612

STATE OF NORTH CAROLINA, *ex rel.*
JOSHUA H. STEIN, ATTORNEY
GENERAL,

Plaintiff,

v.

E.I. DU PONT DE NEMOURS AND
COMPANY; THE CHEMOURS
COMPANY; THE CHEMOURS
COMPANY FC, LLC; CORTEVA, INC.;
DUPONT DE NEMOURS, INC.; and
BUSINESS ENTITIES 1-10,

Defendants.

**ORDER AND OPINION ON
CONSOLIDATED MOTION TO
DISMISS BY DEFENDANTS
CORTEVA, INC. AND DUPONT DE
NEMOURS, INC.
[Public]**[1]

1.     **THIS MATTER** is before the Court on the 29 January 2021 filing of the Consolidated Motion to Dismiss by Defendants Corteva, Inc. and DuPont de Nemours, Inc. (the "Motion").  (ECF No. 76.)

2.     The Motion, filed by Defendants Corteva, Inc. ("Corteva") and DuPont de Nemours, Inc. ("New DuPont"), is brought pursuant to Rules 12(b)(2) and 12(b)(6) of the North Carolina Rules of Civil Procedure (the "Rule(s)").  The Court limits its ruling herein to the issue of whether this Court may properly exercise personal jurisdiction over Corteva and New DuPont pursuant to Rule 12(b)(2).[2]

---

[1] Recognizing that this Order and Opinion cites and discusses the subject matter of documents that the Court has allowed to remain filed under seal in these actions, the Court elected to file this Order and Opinion under seal on 17 August 2021. The Court then permitted the parties an opportunity to propose redactions to the public version of this document. Plaintiffs did not propose any redactions. The Court has accepted in part redactions initially proposed by Defendants Corteva, Inc. and DuPont de Nemours, Inc.

[2] The Court, at a later date, will enter an order and opinion on (1) the Motion to the extent it seeks dismissal of Plaintiff's claims pursuant to Rule 12(b)(6); and (2) the Motion to Dismiss

3. For the reasons set forth herein, the Court **DENIES** the Motion to the extent that it is brought pursuant to Rule 12(b)(2).

> *Rhine Law Firm, PC by Janet R. Coleman, Martin Ramey, and Joel R. Rhine; North Carolina Department of Justice by Marc Bernstein and Daniel Stuart Hirschman; Taft Stettinius & Hollister, LLP by Robert Alan Bilott and David J. Butler; Douglas & London, PC by Gary Jay Douglas, Tate James Kunkle, Michael London, and Rebecca Newman; SL Environmental Law Group, PC by Ashley B. Campbell; Levin Papantonio Rafferty by Wesley A. Bowden; and Kelley Drye & Warren, LLP by Melissa Byroade, Kenneth Corley, Steven Humphreys, William James Jackson, Lauren Hudson Shah, and David Zalman, for Plaintiff State of North Carolina, ex rel. Joshua H. Stein, Attorney General.*
>
> *Ellis & Winters LLP by Jonathan D. Sasser and Thomas H. Segars; Bradley Arant Boult Cummings LLP by C. Bailey King, Jr. and Robert R. Marcus; McCarter & English, LLP by Lanny Steven Kurzweil, John McAleese, and Connor Phalon; and Bartlit Beck, LLP by Katherine L.I. Hacker, John S. Phillips, and Katharine A. Roin, for Defendant E.I. du Pont de Nemours and Company.*
>
> *Robinson, Bradshaw & Hinson, P.A. by R. Steven DeGeorge; Ellis & Winters LLP by Jonathan D. Sasser and Thomas H. Segars; McCarter & English, LLP by Lanny Steven Kurzweil, John McAleese, and Connor Phalon; Arnold & Porter Kaye Scholer LLP by Joel M. Gross, Brian D. Israel, and Allison Rumsey; and Norris McLaughlin, P.A. by Martha N. Donovan and Margaret Raymond-Flood, for Defendant The Chemours Company.*
>
> *Robinson, Bradshaw & Hinson, P.A. by R. Steven DeGeorge; Ellis & Winters LLP by Jonathan D. Sasser and Thomas H. Segars; McCarter & English, LLP by Lanny Steven Kurzweil, John McAleese, and Connor Phalon; Arnold & Porter Kaye Scholer LLP by Joel M. Gross, Brian D. Israel, and Allison Rumsey, for Defendant Chemours Company FC, LLC.*
>
> *Ellis & Winters LLP by Jonathan D. Sasser and Thomas H. Segars; Bradley Arant Boult Cummings LLP by C. Bailey King, Jr. and Robert R. Marcus; and Bartlit Beck, LLP by Katherine L.I. Hacker, John S. Phillips, and Katharine A. Roin, for Defendants Corteva, Inc. and DuPont de Nemours, Inc.*

---

Plaintiff's Complaint for Failure to State a Claim Upon Which Relief can be Granted. (ECF No. 78.)

Robinson, Judge.

## I. INTRODUCTION

4. This action arises out of the alleged contamination of North Carolina's air, land, and water through certain Defendants operations at a chemical manufacturing facility known as Fayetteville Works located in Bladen and Cumberland Counties in North Carolina. (Original Compl. ¶¶ 1, 77, ECF No. 2 ["Compl."].) Plaintiff the State of North Carolina ("Plaintiff") alleges that some Defendants have caused this contamination through the use of per- and polyfluoroalkyl substances ("PFAS"), which "resist biodegradation, persist in the environment, and accumulate in people and other living organisms." (Compl. ¶ 1.) Plaintiff alleges that "vast quantities of PFAS" have been discharged by Defendants through their operation of Fayetteville Works into the air, water, sediments, and soils of North Carolina and PFAS "have had and continue to have profoundly negative impacts on the State." (Compl. ¶¶ 1, 3–4.)

5. Plaintiff brings this suit in its *parens patriae* capacity to protect the health, safety, security, and wellbeing of its residents and its natural resources. (Compl. ¶ 15.) Plaintiff also brings this suit in its capacity as an owner of real property. (Compl. ¶ 15.) Finally, Plaintiff brings fraudulent transfer claims in its capacity as a creditor. (Compl. ¶ 15.)

## II. PROCEDURAL BACKGROUND

6. The Court sets forth here only those portions of the procedural history of this litigation relevant to its determination of the Motion.

7.     Plaintiff initiated this action on 13 October 2020 with the filing of its Original Complaint.

8.     On 29 January 2021, Corteva and New DuPont filed the Motion and Brief in Support of Consolidated Motion to Dismiss by Defendants Corteva, Inc. and DuPont de Nemours, Inc.  (Br. Supp. Consolidated Mot. Dismiss Defs. Corteva, Inc. & DuPont de Nemours, Inc., ECF No. 77 ["Br. Supp."].)

9.     Plaintiff filed its Memorandum of Law in Opposition to Defendants Corteva, Inc.'s and DuPont de Nemours, Inc.'s Motion to Dismiss (the "Response Brief") on 18 February 2021.  (Mem. Law Opp. Defs. Corteva, Inc.'s & DuPont de Nemours, Inc.'s Mot. Dismiss, ECF No. 89 ["Resp. Br."].)

10.     Corteva and New DuPont filed the Reply in Support of Consolidated Motion to Dismiss by Defendants Corteva, Inc. and DuPont de Nemours, Inc. on 1 March 2021.  (ECF No. 96.)

11.     After conferring with counsel, on 23 March 2021, the Court entered the Order Regarding Discovery on Motion to Dismiss Pursuant to Rule 12(b)(2) permitting the parties to conduct limited jurisdictional discovery and submit supplemental briefing on the Motion.[3]  (ECF No. 109.)

---

[3] In the Response Brief, Plaintiff requested "limited jurisdictional discovery" "to the extent the Court is inclined to grant the Motion[.]"  (Resp. Br. 21.)  While the Court permitted jurisdictional discovery, the Court made no determination regarding the propriety of the Motion and in no way provided either Plaintiff or Defendants with guidance on how the Court intended to rule on the Motion before permitting jurisdictional discovery.

12. On 21 May 2021, Plaintiff filed its Supplemental Brief in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Supplemental Brief"). (Suppl. Br. Opp. Defs.' Mot. Dismiss, ECF No. 136 ["Pl.'s Suppl. Br."].)[4]

13. On 4 June 2021, Corteva and New DuPont filed the Supplemental Brief in Support of Consolidated Motion to Dismiss by Defendants Corteva, Inc. and DuPont de Nemours, Inc. ("Defendants' Supplemental Brief"). (Suppl. Br. Supp. Consolidated Mot. Dismiss Defs. Corteva, Inc. & DuPont de Nemours, Inc., ECF No. 145 ["Defs.' Suppl. Br."].)[5]

14. The Court held a hearing on the Motion on 29 June 2021.[6] (*See* ECF No. 135.)

15. The Motion is ripe for resolution.

### III. LEGAL STANDARD

16. When a defendant moves to dismiss a complaint under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff carries the burden of establishing that the

---

[4] The Court cites to Plaintiff's Supplemental Brief as it is filed provisionally under seal in its unredacted form. A partially redacted, public version of Plaintiff's Supplemental Brief can be found filed at ECF No. 138.

[5] The Court cites to Defendants' Supplemental Brief as it is filed provisionally under seal in its unredacted form. A partially redacted, public version of Defendants' Supplemental Brief can be found filed at ECF No. 144.

[6] After the hearing on the Motion, Plaintiff filed a Suggestion of Subsequently Decided Authority Under Business Court Rule 7.9 (the "Suggestion of Authority"). (ECF No. 146.) Attached to the Suggestion of Authority is a decision in a related action rendered by the New Hampshire Superior Court that concluded it could properly exercise personal jurisdiction over Corteva and New DuPont pursuant to New Hampshire law. On 10 August 2021, Plaintiff again filed a Suggestion of Subsequently Decided Authority Under Business Court Rule 7.9, attaching a decision in a seemingly related action in Ohio denying Corteva and New DuPont's motion to dismiss for lack of personal jurisdiction. (ECF No. 152.)

trial court has personal jurisdiction over the defendant. *Bauer v. Douglas Aquatics, Inc.*, 207 N.C. App. 65, 68 (2010).

17. "The standard of review to be applied by a trial court in deciding a motion under Rule 12(b)(2) depends upon the procedural context confronting the court." *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693 (2005). If the trial court considers affidavits and other documentary evidence submitted by the parties in support of and in opposition to a Rule 12(b)(2) motion, the court should act as a fact-finder and determine whether the plaintiff has established personal jurisdiction by a preponderance of the evidence. *See Deer Corp. v. Carter*, 177 N.C. App. 314, 322 (2006); *Soma Tech., Inc. v. Dalamagas*, 2017 NCBC LEXIS 26, at *8–9 (N.C. Super. Ct. Mar. 24, 2017) (acting as a fact-finder and deciding whether grounds for personal jurisdiction existed by a preponderance of the evidence where the court considered the evidence submitted by each party and held a non-evidentiary hearing on the Rule 12(b)(2) motion).

18. "Once a defendant submits an affidavit or evidence challenging personal jurisdiction, unverified allegations in a complaint conflicting with that evidence may no longer be taken as true[,]" though "allegations in [the] complaint uncontroverted by [the evidence] are still taken as true." *Weisman v. Blue Mt. Organics Distrib., LLC*, 2014 NCBC LEXIS 41, at *2 (N.C. Super. Ct. Sept. 5, 2014) (citing *Evergreen Int'l Aviation*, 169 N.C. App. at 693–94).

19. Having considered all relevant matters, the Court finds the following facts by a preponderance of the evidence and makes the following conclusions of law.

## IV.   FINDINGS OF FACT[7]

20.    The Court makes the following findings of fact solely for the purpose of ruling on the Motion to the extent it is brought pursuant to Rule 12(b)(2) without prejudice to the Court making contrary findings of fact at a later stage of the proceeding on a more fully developed record.

21.    Defendant E.I. du Pont de Nemours and Company ("Old DuPont") is a Delaware corporation with its principal place of business in Delaware, conducting business throughout the United States, including North Carolina.  (Compl. ¶ 16.)

22.    Defendant The Chemours Company ("Chemours") is a Delaware corporation with its principal place of business in Delaware.   (Compl. ¶ 17.) Defendant Chemours FC, LLC ("Chemours FC" and with Chemours referred to collectively as the "Chemours Defendants") is a Delaware limited liability company with its principal place of business in Delaware.  (Compl. ¶ 19.)  Chemours FC is a subsidiary of Chemours.  (Compl. ¶ 19.)

23.    Corteva and New DuPont are Delaware corporations.  (Compl. ¶¶ 20–21.)

24.    In 1969, Old DuPont purchased property near Fayetteville, North Carolina and began a manufacturing process at Fayetteville Works, a chemical manufacturing facility, discharging PFAS.  (Compl. ¶¶ 77–79.)  PFAS are chemicals that pose significant risks to human health and the environment as they resist biodegradation,

---

[7] Any determination later stated as a conclusion of law that should have been stated as a finding of fact is incorporated in these findings of fact.  *See Rutherford Elec. Mbrshp. Corp. v. Time Warner Entm't-Advance/Newhouse P'ship*, 240 N.C. App. 199, 215 (2015) ("Further, conclusions of law which are mischaracterized as findings of fact will be treated on review as conclusions of law.").

persist in the environment, and accumulate in people and other living organisms. (Compl. ¶ 1.) Old DuPont manufactured PFAS at Fayetteville Works beginning in 1980. (Compl. ¶ 82.) Old DuPont knew about the dangers posed by PFAS no later than 1984. (Compl. ¶¶ 61–72.) Notwithstanding its knowledge of the dangers posed, Old DuPont continued to manufacture PFAS at Fayetteville Works. (Compl. ¶¶ 61–72, 82.)

25. Old DuPont has engaged in a multi-step process to restructure its business that could place Old DuPont in a position where it is unable to pay billions of dollars of liabilities related to PFAS contamination, including liabilities arising out of the operation of Fayetteville Works. (Compl. ¶¶ 130, 139–43, 150–52.)

26. On 26 June 2015, Old DuPont and Chemours entered into a separation agreement (the "Chemours Separation Agreement"). (Compl. ¶ 156.) Pursuant to the terms of the Chemours Separation Agreement, Old DuPont transferred the Performance Chemicals Business, which included the use of PFAS, and active chemical plants, including Fayetteville Works, to Chemours. (Compl. ¶ 157.) On 1 July 2015, Old DuPont completed the spinoff of the Performance Chemicals Business to Chemours. (Compl. ¶ 154.)

27. Prior to 1 July 2015, Old DuPont owned Chemours as a wholly owned subsidiary. (Compl. ¶ 154.) On 1 July 2015, Chemours became a separate, publicly traded entity. (Compl. ¶ 154.) Chemours Defendants now own and operate Fayetteville Works. (Compl. ¶¶ 17, 19, 81.) Chemours generates up to hundreds of PFAS at Fayetteville Works. (Compl. ¶ 83.)

28.     At the time of the spinoff, Chemours assumed direct liability for Old DuPont's PFAS contamination. (Compl. ¶¶ 18, 159.) However, Chemours was undercapitalized and could not satisfy all of Old DuPont's liabilities; therefore, Old DuPont still faced liability for PFAS contamination. (Compl. ¶ 145.)

29.     In December 2015, Old DuPont and non-party Old Dow entered into an Agreement and Plan of Merger and pursuant to its terms, Old DuPont and Old Dow became subsidiaries of DowDuPont, Inc. ("DowDuPont"). (Compl. ¶ 147.) After its formation, DowDuPont engaged in numerous business segment and product line realignments and divestitures. (Compl. ¶ 148.) DowDuPont combined the assets of Old DuPont and Old Dow and created three distinct divisions: (1) the Agriculture Business, (2) the Specialty Products Business, and (3) the Materials Science Business. (Compl. ¶ 174.)

30.     After creating the three business divisions, DowDuPont incorporated Corteva and non-party New Dow to hold two of DowDuPont's business divisions. (Compl. ¶ 176.) On 1 April 2019, Corteva, New Dow, and DowDuPont entered into the Separation and Distribution Agreement (the "DowDuPont Separation Agreement"). (Compl. ¶ 177; *see also* Resp. Br. Ex. A, ECF No. 89.1 ["DowDuPont Separation Agreement"].)

31.     On 2 May 2019, DowDuPont consolidated the Agriculture Business into Old DuPont. (Compl. ¶ 179.) On 31 May 2019, DowDuPont contributed its ownership of Old DuPont to Corteva. (Compl. ¶ 179.) Effectively, pursuant to the terms of the DowDuPont Separation Agreement, the Agriculture Business was allocated to

Corteva. (Compl. ¶ 177.) On 1 June 2019, Corteva became an independent, public company. (Compl. ¶ 179.)

32. DowDuPont retained the Specialty Products Business. (Compl. ¶¶ 177–79.) On 1 June 2019, DowDuPont changed its name to Du Pont de Nemours, Inc. (referred to herein as New DuPont). (Compl. ¶ 179.)

33. Pursuant to the terms of the DowDuPont Separation Agreement, Corteva and New DuPont assumed certain direct financial liability of Old DuPont. (Compl. ¶ 180.) When dividing DowDuPont's three business divisions, Old DuPont transferred valuable assets and business lines to New DuPont and Corteva for less than the assets' value. (Compl. ¶¶ 182, 253.) The value of Old DuPont has continued to decrease and at one point, declined to a net worth of negative $1.125 billion. (Compl. ¶¶ 182, 184, 186.)

## V.     ANALYSIS AND CONCLUSIONS OF LAW[8]

34. "Determining whether personal jurisdiction exists is usually a 'two-step analysis': jurisdiction must be authorized by the State's long-arm statute and consistent with the federal Due Process Clause." *Banc of Am. Merch. Servs., LLC v. Arby's Rest. Grp., Inc.*, 2021 NCBC LEXIS 60, at *12 (N.C. Super. Ct. June 30, 2021) (citing *Beem USA LLLP v. Grax Consulting, LLC*, 373 N.C. 297, 302 (2020)). North Carolina's long-arm statute is "intended to make available to the North Carolina

---

[8] Any findings of fact that are more appropriately deemed conclusions of law are incorporated by reference into the Court's analysis and conclusions of law. *See Sheffer v. Rardin*, 208 N.C. App. 620, 624 (2010) (providing that the appellate court will treat findings of fact that are "more properly designated" as conclusions of law as conclusions of law for the purposes of an appeal).

courts the full jurisdictional powers permissible under federal due process." *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676 (1977). Accordingly, the "two-step analysis" often "collapses into one" inquiry: whether the exercise of personal jurisdiction is allowed under the due process clause. *Quidore v. Alliance Plastics, LLC*, 2020 NCBC LEXIS 63, at *8–9 (N.C. Super. Ct. May 19, 2020) (citing *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 671 (2001); *Worley v. Moore*, 2017 NCBC LEXIS 15, at *19 (N.C. Super. Ct. Feb. 28, 2017)).

35. Corteva and New DuPont contend in their briefing on the Motion that "the only question the Court needs to address is whether the exercise of personal jurisdiction would violate due process." (Br. Supp. 5 fn. 2.) Therefore, the Court limit's its analysis to this question. *See, e.g., Arby's Rest. Grp.*, 2021 NCBC LEXIS 60, at *12.

36. The Due Process Clause requires that a defendant "have certain minimum contacts" with the State so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). "The primary concern of the Due Process Clause as it relates to a court's jurisdiction over a nonresident defendant is the protection of an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Beem*, 373 N.C. at 302 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985)).

37.     "There are two types of personal jurisdiction: specific jurisdiction and general jurisdiction." *Worley*, 2017 NCBC LEXIS 15, at \*21.  Plaintiff does not contend that this Court may exercise general jurisdiction over Corteva and New DuPont.  (Resp. Br. 12.)  Therefore, the Court limits its discussion herein to specific jurisdiction.

38.     Specific jurisdiction, or "case-linked" jurisdiction, "exists when the cause of action arises from or is related to defendant's contacts with the forum." *Skinner v. Preferred Credit*, 361 N.C. 114, 122 (2006).  "Specific jurisdiction is, at its core, focused on the 'relationship among the defendant, the forum, and the litigation.' " *Beem*, 373 N.C. at 303 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 133 (2014)).

39.     Plaintiff contends that "there are two independent bases to exercise personal jurisdiction over [Corteva and New DuPont]: (i) Old DuPont's jurisdictional contacts are imputed to them because they assumed Old DuPont's PFAS liabilities pursuant to the DowDuPont Separation Agreement. . . ; and (ii) they participated in fraudulent transfers purposefully directed at North Carolina." (Pl.'s Suppl. Br. 1.)  In other words, Plaintiff in part contends the Court may exercise personal jurisdiction over Corteva and New DuPont not based on their contacts with the State but based on Old DuPont's contacts with the State.[9]

---

[9] Plaintiff also argues, seemingly separate and distinct from its arguments related to successor liability and imputation of Old DuPont's contacts, that Corteva and New DuPont "purposefully directed their fraudulent transfer at North Carolina" and requests that the Court exercise personal jurisdiction over them by applying *Calder v. Jones*, 465 U.S. 783 (1984) and its progeny.  (Pl.'s Suppl. Br. 8–11.)  However, the Court need not address this argument due to its conclusion that the Court may exercise personal jurisdiction over Corteva and New DuPont on other grounds.

40. The appellate courts of North Carolina have not spoken directly to the issue raised here: whether a predecessor corporation's contacts with the forum that establish personal jurisdiction over it may be imputed to a successor corporation for the purposes of establishing personal jurisdiction over the successor corporation. Because of the paucity of direct North Carolina authority on the subject, this Court looks elsewhere for persuasive guidance.

41. "The great weight of persuasive authority permits imputation of a predecessor's actions upon its successor whenever forum law would hold the successor liable for its predecessor's actions." *Synergy Ins. Co. v. Unique Personnel Consultants, Inc.*, 2017 U.S. Dist. LEXIS 187970, at \*2 (W.D.N.C. Nov. 14, 2017) (emphasis omitted) (quoting *City of Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 454 (4th Cir. 1990)); *see also Leonard v. Bed, Bath & Beyond, Inc.*, 2016 U.S. Dist. LEXIS 2237, at \*8 (E.D.N.C. Jan. 18, 2016) ("Nonetheless, the court notes that it may exercise personal jurisdiction over a successor corporation to the extent that such jurisdiction exists over its predecessor corporation."); *Ostrem v. Prideco Secure Loan Fund, LP*, 841 N.W.2d 882, 897 fn. 3 (Iowa 2014) (collecting cases).

42. "[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Patin v. Thoroughbred Power Boats*, 294 F.3d 640, 653 (2002); *see also Purdue Research Found. v. Sanofi-*

*Synthelabo, S.A.*, 338 F.3d 773, 778 (7th Cir. 2003) ("[S]everal courts have recognized that the jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending due process."). "The theory underlying these cases is that, because the two corporations are the same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis." *Patin*, 294 F.3d at 653 (cleaned up).

43.     While North Carolina courts have not directly addressed the issue of imputing a predecessor's contacts to the successor for the purposes of personal jurisdiction, to hold otherwise would allow a corporation to "avoid all consequences . . . by just reforming in some other jurisdiction and avoiding any accountability[.]" *Madison Mgmt. Grp.*, 918 F.2d at 455 (citation omitted). Accordingly, the Court follows the federal courts and concludes that personal jurisdiction over a defendant based on a theory of successor liability comports with due process.

44.     Pursuant to North Carolina law, "[a] corporation which purchases all, or substantially all, of the assets of another corporation is generally not liable for the old corporation's debts or liabilities." *Budd Tire Corp. v. Pierce Tire Co.*, 90 N.C. App. 684, 687 (1988). However, there are four "well-settled exceptions to this general rule against successor liability." *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 791 (2002). A successor corporation, or a purchasing corporation, may be subject to liability for the debts of its predecessor, or a selling corporation, where:

> (1) there is an express or implied agreement by the purchasing corporation to assume the debt or liability; (2) the transfer amounts to a de facto merger of the two corporations; (3) the transfer of assets was done for the purpose of defrauding the corporation's creditors; or (4) the

purchasing corporation is a mere continuation of the selling corporation in that the purchasing corporation has some of the same shareholders, directors, and officers.

*Budd Tire*, 90 N.C. App. at 687 (internal quotation marks omitted).

45. North Carolina law "has treated the question of a successor corporation's liability for the debts or liabilities of its predecessor as a matter of equity, endeavoring to protect the predecessor's creditors while respecting the separateness of the corporate entities." *Id.* at 689. The Court concludes both the first and third *Budd Tire* exceptions are applicable here.

46. As to the first exception, Corteva and New DuPont expressly agreed to assume Old DuPont's PFAS liabilities. Pursuant to the DowDuPont Separation Agreement, Corteva assumed all of the Agriculture Liabilities and New DuPont assumed all of the Specialty Products Liabilities. (DowDuPont Separation Agreement § 2.2(c).) The term Agriculture Liabilities is defined to include "any of the Liabilities set forth on Schedule 1.1(38)(vii)." (DowDuPont Separation Agreement § 1.1(38)(vii).) The term Specialty Products Liabilities is defined to include "any of the Liabilities set forth on Schedule 1.1(309)(vi)." (DowDuPont Separation Agreement § 1.1(309)(vi).)

47. On 1 June 2019, DowDuPont, now New DuPont, and Corteva entered into a Letter Agreement. (Letter Agreement, ECF No. 136.2 ["Letter Agreement"].) The Letter Agreement expressly amended Schedule 1.1(38)(vii) and Schedule 1.1(309)(vi) to the DowDuPont Separation Agreement. (Letter Agreement NCAG-CTVA-001373–001375.)

48.     Under the ███████████████████ in the Letter Agreement, Schedule 1.1(38)(vii) of the DowDuPont Separation Agreement is amended to add the following items:



(Letter Agreement NCAG-CTVA-001373–001374.)

49.     Schedule 1.1(309)(vi) of the DowDuPont Separation Agreement is similarly amended by the Letter Agreement to add the following items:



(Letter Agreement NCAG-CTVA-001374–001375.)

50.   The DowDuPont Separation Agreement defines the term "DuPont Discontinued and/or Divested Operations and Business Liabilities" to include "any and all Liabilities to the extent arising out of or related to any Discontinued and/or Divested Operations and Businesses of any member (at any point in time) of [Old] DuPont (or any of their respective predecessors), including those set forth in Schedules 1.1(15) . . . and 1.1(291)[.]" (DowDuPont Separation Agreement § 1.1(102).)

51.   Schedule 1.1(15) to the DowDuPont Separation Agreement incaludes



(ECF No. 136.4.)[10] ███████████████████████████████████████████ (Letter Agreement NCAG-CTVA-001406.)  It is clear that by execution of the DowDuPont Separation Agreement and the Letter Agreement, Corteva and New DuPont assumed certain liabilities related to Old DuPont's manufacturing of PFAS.

52.   Notwithstanding this express assumption of liabilities, Corteva and New DuPont contend they did not assume Old DuPont's PFAS liabilities because (1) Chemours assumed all of the PFAS liabilities that were capable of being assumed; and (2) Corteva and New DuPont agreed to indemnify each other for PFAS-related

---

[10] The broader definition of PFAS includes PFOA (perfluorooctanoic acid).  (Compl. ¶ 4.)

losses but did not assume PFAS liabilities. (*See generally* Defs.' Suppl. Br. 3–12.) The Court finds Defendants' arguments unpersuasive for two reasons.

53. First, Chemours' assumption of PFAS liabilities as a legal matter does not preclude Corteva and New DuPont from assuming those same PFAS liabilities and Corteva and New DuPont do not cite any authority supporting this position. (*See* Defs.' Suppl. Br. 3–5.) Second, the DowDuPont Separation Agreement's definition of Indemnifiable Loss or Losses is broad. "Indemnifiable Loss" and "Indemnifiable Losses" are jointly defined by the DowDuPont Separation Agreement as:

> any and all Damages, losses, deficiencies, Liabilities, obligations, penalties, judgments, settlements, claims, payments, fines, interest, costs and expenses (including the costs and expenses of any and all Actions and demands, assessments, judgments, settlements, and compromises relating thereto and the reasonable costs and expenses of attorneys', accountants', consultants' and other professionals' fees and expenses incurred in the investigation or defense thereof or the enforcement of rights hereunder).

(DowDuPont Separation Agreement § 1.1(144).) The definition of Indemnifiable Loss and Indemnifiable Losses allows for the interpretation that Corteva and New DuPont not only agreed to indemnify against certain liabilities but additionally assume the same liabilities. *See, e.g., Town of Lexington v. Pharmacia Corp.*, 2015 U.S. Dist. LEXIS 36815, at *10–11 (D. Mass. Mar. 24, 2015) ("A plain reading of the Distribution Agreement indicates that [the defendant] both assumed liability and indemnified [the co-defendant] against liability.")

54. Corteva and New DuPont largely rely on the Letter Agreement's language that the parties "wish to enter into certain additional agreements in a manner effective as between the Letter Parties [Corteva and New DuPont] . . . but *not* . . .

Third-Party Beneficiaries." (Defs.' Suppl. Br. 7 (emphasis and modifications in original).) However, as stated in *Town of Lexington*, a successor corporation "may not shield itself from liability it expressly assumed by virtue of a clause negating third-party beneficiary rights." *Id.* at *14 (citing *Safety-Kleen Corp. v. Arkema, Inc.*, 380 B.R. 716, 740 (Del. Bankr. 2008)); *see also Caldwell Trucking PRP v. Rexon Tech. Corp.*, 421 F.3d 234, 245 (3d Cir. 2005) (providing that "general, boilerplate language" excluding third-party beneficiary recovery without specific reference to a contractual provision is insufficient to preclude third-party actions where there is an express assumption of liabilities).

55.     In reading the DowDuPont Separation Agreement and its subsequent amendment by way of the Letter Agreement, the Court concludes that Plaintiff has established by the preponderance of the evidence that Corteva and New DuPont agreed to assume Old DuPont's PFAS-related liabilities. Therefore, based on the exceptions to successor liability, imputing Old DuPont's contacts to Corteva and New DuPont is appropriate.

56.     Even if the Court made a contrary conclusion regarding the interpretation of the DowDuPont Separation Agreement as amended and Corteva's and New DuPont's assumption of PFAS liabilities, the Court further concludes that the third exception in *Budd Tire* applies to this case. Plaintiff argues that Corteva and New DuPont's "participation in the fraudulent transfer of Old DuPont's assets was directed at the State and designed to frustrate its ability to collect on any judgment related to Old DuPont's contamination of North Carolina's natural resources." (Pl.'s

Suppl. Br. 8–9.) It is Plaintiff's position that New DuPont and Corteva "targeted their fraudulent transfer at the State, frustrating its ability . . . to reach Old DuPont's assets." (Pl.'s Suppl. Br. 9.)

57.    Plaintiff, in its capacity as a creditor, asserts two claims for relief against Corteva and New DuPont for fraudulent transfers of Old DuPont's assets and business lines to Corteva and New DuPont. (Compl. ¶¶ 15, 231–39, 251–60.) Plaintiff alleges that Old DuPont undertook a series of transactions to shield itself from billions of dollars in liabilities related to its discharge of PFAS at its manufacturing facilities, including Fayetteville Works. (Compl. ¶¶ 13, 142–43, 145, 182.) Plaintiff further alleges that these transactions have resulted in (1) Old DuPont having a negative net worth; (2) Chemours being undercapitalized and unable to satisfy Old DuPont's PFAS liabilities; and (3) the transfer of valuable assets from Old DuPont to Corteva and New DuPont for far less consideration than those assets were worth. (Compl. ¶¶ 145, 182, 186.) Lastly, Plaintiff alleges that Corteva and New DuPont "acted with the actual intent to hinder, delay, and defraud creditors or future creditors." (Compl. ¶ 256.) At this stage of the proceeding, all of these allegations are sufficient to show that Old DuPont transferred assets to Corteva and New DuPont for the purpose of defrauding its potential creditors. *See Synergy Ins.*, 2017 U.S. Dist. LEXIS 187970, at *4–5 (considering the successor's payment of inadequate consideration for the predecessor's assets in determining that the third *Budd Tire* exception applied); *Budd Tire*, 90 N.C. App. at 689 (considering that (1) the predecessor's assets were sold for insufficient consideration; (2) the predecessor was

not left with sufficient assets to pay existing creditors; and (3) the successor corporation knew that the consideration paid would be inadequate to satisfy the predecessor's debts, in affirming the trial court's conclusion that there was a fraudulent transfer for the purpose of successor liability).

58. It is clear and uncontested that Old DuPont has sufficient minimum contacts with the State through its operation of Fayetteville Works. The Court concludes that, at this stage of the proceeding, Plaintiff has established successor liability by the preponderance of the evidence as to Corteva and New DuPont under the first and third *Budd Tire* exceptions. Therefore, the Court may impute Old DuPont's contacts with the State to Corteva and New DuPont to establish personal jurisdiction over them.

59. In sum, the Court concludes that Old DuPont's contacts can be imputed to Corteva and New DuPont, consistent with due process, to establish personal jurisdiction over Corteva and New DuPont; therefore, the Motion, to the extent it is brought pursuant to Rule (12)(b)(2), should be DENIED.

## VI. CONCLUSION

60. For the foregoing reasons, the Court hereby **DENIES** the Motion to the extent it is brought pursuant to Rule 12(b)(2). The Court **DEFERS** ruling in part on the Motion to the extent it is brought pursuant to Rule 12(b)(6) and will issue a separate order and opinion determining that portion of the Motion.

**SO ORDERED**, this the 9th day of September, 2021.

/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases